*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0204P (6th Cir.)
File Name: 00a0204p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　　*Plaintiff-Appellee,*

　　　*v.*　　　　　　　　　　　　No. 98-6183

JOHN "J.R." MORGAN,
　　　　　*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 98-10008—James D. Todd, District Judge.

Argued: September 14, 1999

Decided and Filed: June 16, 2000

Before: BATCHELDER and GILMAN, Circuit Judges;
HOOD, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Stephen B. Shankman, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for

———————————

[*] The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

Appellant. Richard Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee. **ON BRIEF:** Stephen B. Shankman, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant. Richard Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee.

———————————

## OPINION

———————————

DENISE PAGE HOOD, District Judge. Defendant John "J.R." Morgan appeals his jury conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), possession of an unregistered machine gun in violation of 26 U.S.C. § 5861(d), and possession of a machine gun in violation of 18 U.S.C. §922(o). Morgan claims the district court should have allowed him to introduce evidence that his rights to possess firearms were restored and should have given a jury instruction on "entrapment by estoppel" because he claims a police officer led him to believe it was legal for him to possess a firearm. Morgan also claims there was insufficient evidence to convict him of possession of a machine gun because he did not know the firearm was a machine gun. For the reasons set forth below, we **AFFIRM** the district court on all three issues.

## I. BACKGROUND

### A. Procedural History

Morgan was arrested on October 9, 1997. On February 23, 1998, a federal grand jury in the Western District of Tennessee indicted Morgan on four counts: 1) convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g); 2) possession of an unregistered chrome silencer in violation of 26 U.S.C. § 5845(a); 3) possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d); and 4) possession of a machine gun in violation of 18 U.S.C.

book value of $1100 even though his purchase price was $750. Given Morgan's status as a gun enthusiast, a rational jury could have found his testimony–that he did not inspect the weapon for a third selector switch or other automatic weapon identifiers–lacked credibility. Morgan makes much of the fact that Agent Barnett and other agents did not know if the firearm was automatic. However, the standard is whether *Morgan* knew the weapon was automatic. The evidence was sufficient for a reasonable jury to find that Morgan not only had a wide range of knowledge of firearms, but also knew the difference between automatic and semi-automatic weapons, and knew that because this MAK-90 had three selector switches and could be sold at a higher blue book price than a semi-automatic MAK-90, it was an automatic weapon.

## V. CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.

## A.   Standard of Review

We review a claim of insufficiency of the evidence in the light most favorable to the prosecution and must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Wright*, 16 F.3d 1429, 1439 (6th Cir. 1994); *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991).  A reviewing court must reverse only if the record as a whole is not supported by substantial evidence. *Blakeney*, 942 F.2d at 1010.

## B.   Analysis

In *Staples v. United States*, 511 U.S. 600 (1994), the Supreme Court held that in order for the government to prove that a defendant violated 26 U.S.C. § 5861(d), the government must show that the defendant knew of the features of the firearm that bring it within the purview of the statutory definition of a machine gun.

Viewing the evidence in the light most favorable to the prosecution, we conclude that  sufficient evidence was presented at trial to permit a rational trier of fact to find the essential elements of the crime of possession of a machine gun beyond a reasonable doubt.  Agent Cooney testified that the firearm had a third selector switch and other installations which converted the firearm into an automatic weapon. Although Morgan testified that he only had average knowledge of firearms, he had been to Vietnam, had seen M-16s, and knew that some of them were automatic because they had a third selector switch.  From 1980 to 1997, Morgan avidly traded, sold, and took in pawn various firearms, and had a personal collection of sixty to eighty firearms.  Morgan kept a ledger of the types of weapons, their purchase prices, and their blue book values.  Morgan admitted that he knew the difference between a semi-automatic and an automatic weapon, specifically stating that a semi-automatic had two selector switches while an automatic had three.  Although Morgan testified that he did not know the MAK-90 Norinco was automatic when he bought it, he was able to assess a blue

§ 922(o).  The case was tried to a jury that found Morgan guilty on Counts 1, 3, and 4, but not guilty on Count 2.  The court sentenced Morgan to forty-six months' imprisonment followed by two years of supervised release.  This timely appeal followed.

## B.   Factual History

During the summer of 1997, Special Agent Joey Hall of the Treasury Department's Bureau of Alcohol, Tobacco, and Firearms (ATF) located in Oxford, Mississippi, along with Special Agent Robbie Robinson, interviewed Morgan.  The agents became aware of Morgan after they traced a weapon to him during an investigation conducted in Huntsville, Alabama.  When asked, Morgan claimed that he had no prior convictions.  Morgan stated that he was arrested in the late 1960s, but the "judge took care of it."  The officers later found that Morgan had previously been convicted of third degree burglary on March 27, 1968, and sentenced to three years' imprisonment.

On July 16, 1997, Agent Hall, in conjunction with the Alcorn County Sheriff's Department in Mississippi, telephoned Morgan and asked that he come in for an interview. Agent Hall advised Morgan of his *Miranda* rights and took his statement.  At some point during the statement Morgan said, "I figured that one day I would get caught up with, and I knew this was a violation of the law."  Morgan admitted that he owned about sixty-one firearms. Agent Hall told Morgan that it was illegal for him to possess the guns, suggested that he give the firearms to either a relative or his attorney, and said that it would be illegal for him to sell the firearms.  Morgan stated that he intended to give the firearms to his parents.

On October 9, 1997, Special Agent Jack Barnett of the ATF advised the McNairy County Sheriff's Department that he was assigned to investigate Morgan.  While Agent Barnett was at the Sheriff's Department, Morgan telephoned the office and requested to speak to him.  Agent Barnett told Morgan that he was under investigation for firearms dealing,

and Morgan asked if he could come down and talk to the agent. When Morgan arrived, he and Agent Barnett went into a conference room to talk. Morgan admitted that he had a prior conviction and that he currently possessed firearms in his home. Morgan stated that he had previously spoken with Agent Joey Hall. Morgan admitted that Agent Hall told him to get rid of the weapons, but explained that he enjoyed going to gun shows, going to flea markets, and buying, selling and trading guns. Morgan indicated that he had recently sold and purchased a number of guns, even after talking to Agent Hall. When Morgan asked Agent Barnett how he could get rid of the guns, Agent Barnett replied that he could give them to a relative, but he could not have access to them. Morgan consented to a search of his home, where Agent Barnett found fifty-eight firearms located throughout his residence.

Just before the search was concluded, the agent asked Morgan if he had a silencer, and he replied that he had a "suppressor." The agent later recovered a silencer which was lying under a hat on top of a chest of drawers. Agent Barnett also asked whether Morgan had any machine guns because he had received information that Morgan had a MAK-10 machine gun. Morgan insisted that he did not.

During the search, Agent Barnett found a rifle that he suspected to be an illegal firearm. The agent testified that he was not certain if the firearm was a machine gun since he was not a firearms expert, and the weapon was in two parts when he found it. ATF Special Agent Thomas Lesnak sent the pieces of the firearm to a laboratory in Washington, D.C., for inspection. Agent Lesnak testified at trial that he and other agents had no definitive opinion as to whether the firearm was automatic. At trial, Michael Cooney, a firearms enforcement officer with the ATF, identified the firearm as a MAK-90 Sporter. Officer Cooney testified that he received the firearm in four parts, and that the firearm was made in China as a semi-automatic weapon, but had been converted to automatic by installing, among other things, an automatic sear and a third selector position. Officer Cooney test-fired the firearm and determined that it was an automatic weapon. After the

charge, and is so important that failure to give it substantially impairs the defense. *United States v. Sassak*, 881 F.2d 276, 279 (6th Cir. 1989).

## B. Analysis

In order to prove the defense of entrapment by estoppel, a defendant must show that: 1) a government agent announced that the charged conduct was legal; 2) the defendant relied on the agent's announcement; 3) the defendant's reliance was reasonable; and 4) given the defendant's reliance, prosecution would be unfair. *United States v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992).

The district court did not err in refusing to give an instruction on entrapment by estoppel. No government agent told Morgan, having the status of a convicted felon, that he could legally possess a firearm. On the contrary, it is undisputed that Agent Hall told Morgan that it was illegal for him to possess or sell the guns. Agent Hall testified that he told Morgan that, as a convicted felon, he could not possess guns, and told Morgan to give, and not sell, the firearms to a relative or his attorney. Agent Barnett testified that Morgan admitted that Agent Hall advised him to get rid of the firearms. Morgan's former fianceé testified that he told her that Agent Hall had advised him to get rid of the firearms because it was illegal for him to possess them. Morgan himself testified to the same. The district court did not err in finding that the first element was not met, and accordingly, Morgan was not entitled to the instruction on entrapment by estoppel.

## IV. SUFFICIENCY OF EVIDENCE OF POSSESSION OF MACHINE GUN

As his final assignment of error, Morgan argues that there was insufficient evidence to convict him of possession of an unregistered machine gun in violation of 26 U.S.C. § 5861(d), and possession of a machine gun in violation of 18 U.S.C. § 922(o), because he did not know that the firearm was an automatic weapon.

Morgan's 1968 burglary conviction is a crime punishable by more than one year. Morgan had his civil rights restored in 1998 after he possessed the firearms on October 7, 1997. Because the 1968 burglary conviction was a firearms disabling offense on the day that he possessed the firearm, the district court correctly concluded that Morgan's post-indictment restoration of civil rights was immaterial to his charge of being a felon in possession of a firearm.

## III.  ENTRAPMENT BY ESTOPPEL

At the close of evidence, Morgan argued that the district court should instruct the jury on the legal defense of "entrapment by estoppel." Morgan claimed that Agent Hall told Morgan to dispose of the firearms, but neither gave him a time limit, nor checked to make sure he disposed of the weapons, and therefore the jury should have decided whether, in keeping the weapons, he relied on the statement of Agent Hall. The district court denied the request, finding that in order to be entitled to the instruction, Morgan was required to present evidence that a government agent had told him that an action was legal. Morgan, however, presented no evidence that anyone told him that his possession of the firearms was legal. In fact, Morgan's own testimony made it clear that the agents had told him just the opposite.

### A.  Standard of Review

A district court must grant an instruction on the defendant's theory of the case if the theory has some support in the evidence and the law. *United States v. Duncan*, 850 F.2d 1104, 1117-18 (6th Cir. 1988); *United States v. Garner*, 529 F.2d 962, 971 (6th Cir. 1976). An instruction which lacks evidentiary support or is based on speculation should not be given. *United States v. Lindo*, 18 F.3d 353, 356 (6th Cir. 1994). The proposed instruction must adequately submit the issues and applicable law to the jury. *United States v. Brown*, 946 F.2d 1191, 1194 (6th Cir. 1991). When reviewing a district court's decision not to give a jury instruction, the reviewing court must reverse only if it finds that the proposed instruction is correct, is not substantially covered by the

lab report on the firearm was received, Morgan was indicted for possession of a machine gun.

Cynthia Ervin, who had been engaged to marry Morgan prior to his arrest in October 1997, testified at trial that he had several firearms in his house. Ms. Ervin stated that Morgan told her that an ATF agent had told him that it was illegal for him to have firearms because he was a convicted felon, and that he could not sell the firearms, but could give them to his parents. After the conversation with the ATF agent, Morgan bought at least one firearm. Morgan told Ms. Ervin that he needed to get rid of a "Mag-70 or a MAK-70 or something like that" because he was not supposed to have it, but she did not know if Morgan disposed of it.

Morgan also testified at trial. Morgan stated that he was convicted for a 1967 burglary and paroled around 1970. He began purchasing weapons in 1980 and had bought eighty firearms by July 1997. Morgan kept a ledger listing the serial numbers, the purchase price, and the blue book value of his purchases. When Morgan first spoke with Agent Hall, he told the agent that he had firearms, and the agent told him to get rid of them and not to buy anymore. Morgan claims that in July 1997 Agent Hall again told him not to possess the firearms, and stated that "he [Agent Hall] could come out and take them then, but he wasn't going to be no horse's butt about it and for me [Morgan] to just get rid of them." Morgan began selling the guns to other collectors and kept a record of the transactions in his ledger. Morgan testified that he had no contact with law enforcement again until October 9, 1997, when he gave consent for Agent Barnett to search his home. By this time, Morgan had sixty firearms which he had not disposed of because he "had too much money invested in them," and because he had relied on the statement of Agent Hall. Morgan claims that after the search the agents left two of the firearms, so he took them to his father's house. Morgan maintains that he thought he could possess firearms seven years after he served his sentence.

Morgan testified that he bought the MAK-90 Norinco Chinese rifle at a flea market, and that it was dismantled when he bought it, and did not have the inner workings. As part of a package deal, Morgan received other parts, ammunition, and scopes. Morgan paid a total price of $750, but admitted that no Norincos had that blue book value. He planned to sell the firearm for $1100. Morgan insisted that he did not fully inspect the weapon, did not know it was fully automatic, had not adjusted it to be automatic, and never assembled the firearm. Morgan stated he only had average knowledge of firearms, but submitted that he knew the difference between a semi-automatic and an automatic weapon. Specifically, he testified that a semi-automatic had two selector switches while an automatic had three. Morgan knew that an M-16 had a third selector switch and that some of them were fully automatic.

## II.  FELON IN POSSESSION

On the day of trial, the Government made an oral motion in limine[1] to preclude Morgan from introducing evidence that, after his indictment, Circuit Court Judge Kerry Blackwood[2] restored his civil rights. The Government argued that because Morgan possessed the weapons in October 1997 before he had his rights restored in February 1998, the restoration had no bearing on the case. Morgan cited two federal cases that indicated the evidence should not be presented, but argued that these cases were decided before the effective date of the statute under which he was indicted. Morgan then argued that the statute was clear and unambiguous, and that nothing in the

---

[1] At trial, the Government claimed that it had filed a written motion in limine. Morgan indicated that he did not receive a filed, stamped copy, and the district court stated that it did not receive a copy at all. The district court then considered the motion as an oral motion.

[2] Judge Blackwood is a Circuit Court Judge of McNairy County, Tennessee. The Government noted that it did not know whether Judge Blackwood knew of the pending indictment before the court restored Morgan's civil rights.

is relieved of his disability by some affirmative action, such as a qualifying pardon. . . ."  *Lewis*, 445 U.S. at 60-61. The rule of lenity does not apply because the statute is unambiguous. It is the status of the defendant on the date he possessed the firearm as alleged in the indictment that controls whether or not he has violated the statute, not his later status after his civil rights have been restored.

The statutory structure of § 922 further indicates that Congress intended to establish a class of individuals who are presumptively dangerous and did not limit the class to those who are validly convicted, or even indicted. *See Lewis*, 445 U.S. at 64. *See, e.g.*, 18 U.S.C. § 922(n) (West Supp. 1997) (prohibiting possession of a firearm by one "indicted" for a crime punishable by imprisonment for a term exceeding one year).

Legislative history cited in *Kahoe* also supports this finding. Section 921(a)(20) was specifically amended to overrule *Dickerson* and *Thrall*, with the result being that a state felony conviction would no longer be a disabling circumstance after the conviction was set aside, expunged, or pardoned, or the defendant's civil rights were restored in state court. *See Kahoe*, 134 F.3d at 1234. Nothing in the amendment or the legislative history purports to overrule, or even modify, *Lewis*. Congress was certainly aware of *Lewis*, but it did not attempt to amend the language of the statute to prohibit a court from using a post-indictment expunction or restoration of civil rights as a predicate offense for a possession of firearms charge. The *Lewis* decision remains good law and is controlling in this case.

We also note that in all of the cases cited herein the predicate convictions were ruled invalid. Morgan's conviction was not ruled invalid, but rather his civil rights were restored. Nevertheless, nothing in the case law cited nor in the legislative history indicates that Congress intended the restoration of civil rights to have a different effect than expunction or pardon for purposes of § 921(a)(20).

similar provision with respect to pardons in 18 U.S.C. app. 1202, relating to possession of firearms, but through over sight does not include any conforming provision in 18 U.S.C. 922, dealing with their purchase or receipt. This oversight, which resulted in a ruling that a state pardon does not permit a pardoned citizen to receive or purchase a firearm, despite the express provision in the pardon that he may possess it, would be corrected. In the event that the official granting the pardon, restoration of rights, or expungement of record does not intend that it restore the right to firearm ownership, this provision honors that intent as expressly provided in the order or pardon.

*Kahoe*, 134 F.3d at 1233-34 (quoting S. Rep. No. 98-583, at 7 (1984) (footnote omitted)). The Fourth Circuit reasoned that in addition to the fact that the Senate Report neither cited *Lewis* nor discussed its application, the amended language of § 921(a)(20) does not contradict the holding of *Lewis*, and therefore *Lewis* remains controlling. 134 F.2d at 1232.

The *Kahoe* court also considered and disagreed with the First Circuit's decision in *Pettiford*. The *Kahoe* court noted that the *Pettiford* court failed to analyze or even cite *Lewis* or the legislative history of the 1986 amendment to § 921(a)(20). The court criticized *Pettiford* for relying on the rule of lenity because the statute contained no "grievous ambiguity or uncertainty." *Kahoe*, 134 F.3d at 1234 (citing *Chapman v. United States*, 500 U.S. 453, 463 (1991) (quoting *Huddleston v. United States*, 415 U.S. 814, 831 (1974)); *Moskal v. United States*, 498 U.S. 103, 108 (1990)).

Although Morgan urges this court to adopt the reasoning of *Pettiford*, the rationale of *Kahoe* is more persuasive. The plain language of § 921(a)(20), "has had" civil rights restored, means that once a defendant's civil rights have been restored, that conviction for which he lost his civil rights can no longer be used as a predicate offense under § 922(g)(1). Said conversely, as in *Lewis*, "a felony conviction imposes a firearm disability until the conviction is vacated or the felon

statute precluded him from introducing the post-arrest restoration-of-rights evidence. Morgan argued, in the alternative, that if the statute was ambiguous then the rule of lenity in criminal cases required that the evidence of restoration be introduced. The district court agreed with the Government and issued the following ruling from the bench:

. . . if the expungement or the restoration of rights had occurred prior to the date of this offense, I think it would be, clearly, relevant. But since the restoration of rights occurred months after the date alleged in this indictment, it's my judgment - - or my ruling that it's not relevant to the crime charged in this case, and I'll grant the government's motion in limine and prohibit introduction of the petition and the order restoring rights.

It's an interesting question, but it seems to me that it was the status of the defendant on the date alleged in the indictment that counts as to whether or not he's violated the statute rather than his later establishment. . . .

## A. Standard of Review

A district court's statutory construction is a question of law which this court reviews *de novo*. *United States v. Stephens*, 118 F.3d 479, 481 (6th Cir. 1997); *United States v. Brown*, 988 F.2d 658, 660 (6th Cir. 1993); *In re Griggs*, 965 F.2d 54, 56 (6th Cir. 1992).

## B. Analysis

The statute which prohibits a convicted felon from possessing firearms provides:

(g) It shall be unlawful for any person--
　　(1) who has been convicted in any court of, a
　　crime punishable by imprisonment for a term
　　exceeding one year;
　　　　. . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g). The phrase "crime punishable by imprisonment for a term exceeding one year" is defined as follows:

What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

The parties do not dispute that Morgan's 1968 burglary conviction is a crime punishable by imprisonment for more than one year. Morgan contends that pursuant to the exception provided in § 921(a)(20), his burglary conviction is no longer a conviction for the purposes of § 922(g)(1), because his civil rights have been restored.

In *Lewis v. United States*, 445 U.S. 55 (1980), a case cited by Morgan, the Supreme Court addressed the issue of whether a state felony conviction which was subject to collateral attack under *Gideon v. Wainwright*, 372 U.S. 335 (1963), but not yet overturned or pardoned, could serve as a predicate offense under 18 U.S.C. app. § 1202(a)(1) (Supp. IV 1969). That statute proscribed the possession of a firearm by "any person who . . . has been convicted by a court of the United States or of a State . . . of a felony." *Lewis*, 445 U.S. at 56 n.1. The Supreme Court held, "[the statute's] plain meaning is that the fact of a felony conviction imposes a firearm

---

The Court further found that using an invalid conviction to prohibit a defendant from carrying a firearm did not violate the equal protection guarantee of the Due Process Clause of the Fifth Amendment because there was a rational basis to believe that a felony conviction, even if invalid, was an adequate basis on which to prohibit firearm possession. *Id.* at 65-66. The Court also found that it was not inconsistent to hold that a later invalidated conviction can be a predicate offense for purposes of § 1202(a)(1), while holding that such conviction cannot be used for other purposes. *Id.* at 66-67 (contrasting the firearms case with *Loper v. Beto*, 405 U.S. 473 (1972) (witness impeachment); *United States v. Tucker*, 404 U.S. 443 (1972) (sentence enhancement); and *Burgett v. Texas*, 389 U.S. 109 (1967) (recidivist statute)). The Supreme Court reasoned:

In each of those cases [*Loper*, *Burgett*, and *Tucker*], this Court found that the subsequent conviction or sentence violated the Sixth Amendment because it depended upon the reliability of a past uncounseled conviction. The federal gun laws, however, focus not on reliability, but on the mere fact of conviction, or even indictment, in order to keep firearms away from potentially dangerous persons. Congress' judgment that a convicted felon, even one whose conviction was allegedly uncounseled, is among the class of persons who should be disabled from dealing in or possessing firearms because of potential dangerousness is rational.

*Id.* at 67. The Court re-emphasized that "a convicted felon may challenge the validity of a prior conviction, or otherwise remove his disability, before obtaining a firearm." *Id.*

After analyzing *Lewis*, the Fourth Circuit in *Kahoe* noted that the Senate Report on the 1986 amendments passed after the decisions in *Lewis*, *Dickerson*, and *Thrall*, specifically cited *Dickerson* and *Thrall* and provided that § 921(a)(20):

would exclude from such convictions any for which a person has received a pardon, civil rights restoration, or expungement of the record. Existing law incorporates a

The *Kahoe* court began by giving an extensive analysis of *Lewis* and ultimately determined that *Lewis* was still good law notwithstanding the amendment of § 921(a)(20).  The court reasoned that in *Lewis*, the Supreme Court found that the sweeping language of § 1202(a)(1) was unambiguously aimed at any person who had been convicted of a felony, and a disabling conviction, though later found unconstitutional, did not alter the fact that the defendant had been convicted at the time he possessed the firearm.  *Kahoe*, 134 F.3d at 1232 (citing *Lewis*, 445 U.S. at 60-61).  The Supreme Court in *Lewis* found persuasive that unlike other federal provisions which "explicitly permit a defendant to challenge, by way of defense, the validity or constitutionality of the predicate felony," § 1202(a)(1) did not include an exception for those "whose outstanding felony conviction ultimately might turn out to be invalid for any reason."  *Lewis* 445 U.S. at 62; *Kahoe*, 134 F.3d at 1232.  The *Lewis* Court noted that § 1202 was enacted contemporaneously with §§ 922(g) and (h) as part of the Omnibus Crime Control and Safe Streets Act of 1968, stating:

> Actually, with regard to the statutory question at issue here, we detect little significant difference between Title IV [§922(g) and (h)] and Title VII [§ 1202]. Each seeks to keep a firearm away from "any person . . . who has been convicted" of a felony, although the definition of "felony" differs somewhat in the respective statutes.  But to limit the scope of §§ 922(g)(1) and (h)(1) to a validly convicted felon would be at odds with the statutory scheme as a whole.  Those sections impose a disability not only on a convicted felon but also on a person under a felony indictment, even if that person subsequently is acquitted of the felony charge.  Since the fact of mere indictment is a disabling circumstance, *a fortiori* the much more significant fact of conviction must deprive the person of a right to a firearm.

*Lewis*, 445 U.S. at 64.  The Supreme Court, unlike the *Pettiford* court, did not apply the rule of lenity because it concluded that the statute was unambiguous.  *See id.* at 65.

---

disability until the conviction is vacated or the felon is relieved of his disability by some affirmative action, such as a qualifying pardon. . . ."  *Id.* at 60-61.

After *Lewis*, the Supreme Court had the opportunity to decide *Dickerson v. New Banner Institute, Inc.*, 460 U.S. 103 (1983).  In *Dickerson*, the Court considered whether a state conviction which had been expunged under state law prior to the individual's possession of a firearm could serve as a predicate offense for a firearms disability under the federal statute, 18 U.S.C. § 922(g)(1).  The Court held that notwithstanding that the state court conviction had been expunged before the possession of the firearm occurred, the state conviction remained a predicate conviction for purposes of § 922(g)(1).  *Dickerson*, 460 U.S. at 110-22.  *See also Thrall v. Wolfe*, 503 F.2d 313 (7th Cir. 1974) (finding the same).  Citing *Lewis*, the Court explained, "expunction under state law does not alter the historical fact of the conviction, . . . as does positive or 'affirmative action'. . . . [E]xpunction does not alter the legality of the previous conviction and does not signify that the defendant is innocent of the crime to which he pleaded guilty."  *Dickerson*, 460 U.S. at 115 (citing *Lewis*, 445 U.S. at 60-61).

Morgan also cites *United States v. Cabrera*, 786 F.2d 1097 (11th Cir. 1986), where the Eleventh Circuit held that under *Lewis*, a defendant's state conviction could be used to convict him of being a felon in possession of a firearm because the predicate conviction was not vacated prior to his possessing the weapon, and, in any event, under *Dickerson* the offense could be used even if it had been vacated under state law prior to the possession of the firearm.

Morgan agrees that if *Lewis*, *Dickerson*, *Thrall*, or *Cabrera* are applicable, then his 1968 burglary conviction could be used as a predicate offense for felon in possession of a firearm, and his conviction would stand.  Morgan argues, however, that § 921(a)(20) was amended in 1986 in response to *Dickerson* and *Thrall*.  The effect of the amendment was to make the law of the state of the predicate conviction, rather

than federal law, determinative of whether a defendant's civil rights had been restored. *See Caron v. United States*, 524 U.S. 308, 312-314 (1998). Although not explicitly argued, Morgan's claim is that Congress legislatively abrogated *Lewis* when it amended § 921(a)(20).

Morgan urges this court to adopt the rationale of *United States v. Pettiford*, 101 F.3d 199 (1st Cir. 1996). In *Pettiford*, the defendant was convicted in 1991 of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), and sentenced to fifteen years pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). *Pettiford*, 101 F.3d at 200. The ACCA provides a mandatory minimum fifteen year sentence for a defendant convicted of violating § 922(g) who "has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). Because the ACCA references § 922(g)(1), it incorporates the definition of § 921(a)(20) for a "crime punishable by imprisonment for a term exceeding one year." The defendant in *Pettiford* had nine prior convictions. *Pettiford*, 101 F.3d at 200. In 1994, eight of the nine convictions were vacated on the basis that the defendant did not knowingly and voluntarily enter into his guilty pleas. *Id*. The defendant sought habeas relief under 28 U.S.C. § 2255 because he no longer had the minimum three previous convictions required to enhance his sentence. *Id*. The district court granted habeas relief and resentenced the defendant to four and one half years. *Id*. The First Circuit affirmed.

As an initial matter, the First Circuit pointed out that in *Custis v. United States*, 511 U.S. 485 (1994), the Supreme Court held that although a defendant could not make a collateral attack on state convictions during a federal sentencing enhancement hearing, the defendant could attack the state convictions in state court or on habeas review, and then reapply to federal court to reopen the sentence which was enhanced by the successfully attacked state convictions. *Pettiford*, 101 F.3d at 200-201. The court then rejected the

government's argument that the language of § 921(a)(20), "has been expunged" and "has been pardoned," "indicate[s] that only past offenses vacated prior to the federal proceeding may be discounted by the court, in effect etching the defendant's criminal history record in stone as of that moment." *Id*. at 201. The court believed that the language "read equally well if applied to convictions expunged, etc., subsequent to the federal sentencing." *Id*. The court then applied the rule of lenity and held that under § 921(a)(20) a conviction vacated after a sentence enhancement has been imposed does not constitute a "crime punishable by imprisonment for a term exceeding one year." *Id*. The court stated:

> And with the procedural rule announced in *Custis*, that it is only after sentence that a defendant may attack the convictions that contributed to it, what sense would it make to say that he may attack pre-sentence convictions, but not one whose flaw did not appear until after the federal sentence? Obviously this is the situation every time it is defendant who establishes the flaw.

*Id.*

Morgan notes that the Fourth Circuit came to the opposite conclusion in *United States v. Kahoe*, 134 F.3d 1230 (4th Cir. 1998), but argues that *Pettiford* more accurately interprets the broad language of § 921(a)(20). In *Kahoe*, the defendant pled guilty to carrying a firearm in relation to a drug trafficking offense in March 1994, and while out on bail pending his sentencing, he possessed a firearm. *Kahoe*, 134 F.3d at 1231. Based on the second possession, the defendant was convicted as being a felon in possession of a firearm, with the March 1994 offense serving as the predicate offense. *Id*. The March 1994 offense was vacated pursuant to *Bailey v. United States*, 516 U.S. 137 (1995), which held that a firearm must have been actively employed to satisfy the "use" prong of § 924(c)(1). *Id*. The defendant sought habeas relief, which the district court denied, citing *Lewis*, 445 U.S. 55. The Fourth Circuit affirmed.