**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Sarah MOSS, Defendant–Appellant.**

No. 02–5161.

United States Court of Appeals,
Sixth Circuit.

July 11, 2003.

Before: MOORE and GIBBONS, Circuit Judges; and SCHWARZER, District Judge.*

GIBBONS, Circuit Judge.

Defendant-appellant Sarah Moss was convicted of one count of contempt of court in violation of 18 U.S.C. § 401(3) and four counts of perjury in violation of 18 U.S.C. § 1623. Moss appeals, arguing that the district court erred in denying her motion to dismiss the contempt of court count of the indictment because her refusal to testify was protected by her plea agreement and because the prosecution for contempt arose out of prosecutorial vindictiveness. Moss also claims that the district court erred in denying her motion to dismiss the

perjury counts on the grounds that her allegedly perjurious statements were literally true, and, even assuming her statements were untrue, her testimony did not involve a material misstatement sufficient to submit her to criminal prosecution. Furthermore, Moss contends that the district court erred in refusing to instruct the jury on a reliance on the advice of counsel defense. For the reasons set forth below. we affirm the judgment of the district court.

## I.

On December 10, 1999, Moss pled guilty to one count of conspiracy to distribute and possess with the intent to distribute cocaine hydrochloride in violation of 21 U.S.C. § 846. During the plea proceeding, the district court asked Moss if she had looked at the document titled "Factual Basis," which set forth the evidence the government would have presented if Moss's case had gone to trial. While under oath, Moss responded, "Yes, sir, I have." The district court then asked Moss whether "the factual basis as it pertains to you [is] true and correct insofar as you know?" Moss replied, "Yes, it is."

According to the factual basis, the evidence at trial would have established that Moss was an associate of Tim Sexton, James Legg and Richard Romans, and "[d]uring the course of the conspiracy," she obtained cocaine from Sexton and Legg. The factual basis states that Moss distributed cocaine from two bars where she worked and from her own residence. In addition, the factual basis describes three controlled purchases of cocaine made by Edward Goins, a confidential informant, from Moss. The factual basis further pro-

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

vides that during one of the controlled purchases, Goins stated that "he heard that 'Big Maudey,' also known as Tim Sexton, had high quality cocaine for sale [and Moss] replied 'where do you think mine is coming from.'"

On November 15, 2000, the government called Moss as a witness during the trial of her coconspirators, Sexton, Legg and Romans. After Moss answered some basic questions outside the presence of the jury, counsel for Moss stated that Moss "would like to refrain from testifying in any regard involving any of the facts involved in the case at bar," because until April 27, 2001, Moss was free "to file a petition with this Court to withdraw her guilty plea." The district court reminded Moss that the court had granted the government's motion to provide her with testimonial immunity and had entered an order requiring her to testify, with the understanding that nothing she said could be used against her in any prosecution. The district court informed Moss that she did "not have the right to refuse to testify." Moss's counsel again tried to assert a privilege not to testify based on the fact that Moss had a "full year after her sentencing date to move to withdraw her guilty plea" and that date "has not expired." The district court found that Moss was not asserting a valid legal privilege and stated that the court was "aware of no privilege that would excuse [Moss] from answering" the government's questions. The district court advised Moss that if she refused to testify she would be cited for civil contempt and placed in jail. The district court also told Moss that if the trial ended and she still had not testified, she could then be tried for criminal contempt, and informed Moss of the possible consequences of a criminal contempt prosecution.

After fully explaining the consequences of refusing to testify to Moss and confirm-ing that she understood those consequences, the district court again ordered Moss to testify. The jury was brought back into the courtroom, and Moss began to testify. Moss denied having engaged in "any drug activities" with Legg or Romans. Moss also denied ever receiving cocaine from Sexton, Legg or Romans. Moss admitted that she used cocaine on a daily basis for approximately five years before going to prison, but refused to identify the individuals from whom she purchased cocaine.

After Moss denied that she had obtained cocaine from Sexton, Legg or Romans, the government confronted Moss with her admissions at the time of her guilty plea. Contrary to her statements during the plea colloquy, Moss claimed that she had never seen or read the factual basis presented and discussed during her plea. According to Moss, her attorney told her to inform the district court that she had seen the factual basis and that it was accurate. Moss admitted that she told the district court that the factual basis was true and correct, but claimed that it was not in fact true and that she did not conspire with Sexton, Legg or Romans to distribute or possess with intent to distribute cocaine. The government asked Moss who she conspired with, but Moss refused to answer.

When Moss returned to the district court the following day to resume her testimony, she announced to the court that it was her intention to refuse to testify and stated, "I am willing to accept the circumstances [sic] to that action." The district court again explained to Moss that she had no legal privilege to refuse to answer the questions posed by government counsel. Moss acknowledged that she understood, but continued to refuse to testify. The district court then held Moss in civil contempt. While the trial was still in progress, the district court again advised Moss

of her obligation to testify and she again refused. At the conclusion of the trial, Moss was brought back before the district court and released from her civil contempt sentence.

On August 14, 2001, a federal grand jury returned a seven-count indictment charging Moss with one count of criminal contempt and six counts of perjury based on her actions during the trial of Sexton, Legg and Romans. Prior to her trial on these charges, Moss moved to dismiss the indictment. The district court denied Moss's motions to dismiss. Moss proceeded to trial on November 13, 2001.

At trial, the government called Angela Darlene Estill, formerly Angela Darlene Goins, who testified that Moss obtained cocaine from Legg, who received his supply from Sexton. Estill stated that she knew that Moss was obtaining cocaine from Legg because Estill delivered the drugs to Moss and collected money from her. Estill further testified that she observed Moss sell drugs.

The government also called Elizabeth Sexton, first cousin to Tim Sexton, who testified that she obtained cocaine from Moss. According to Elizabeth Sexton, she would pick up cocaine from Moss, take the cocaine to a purchaser, collect money from the purchaser, return with the money to Moss, and split the profit with Moss. She stated that Moss first told her that Moss obtained the cocaine from Romans, and later Moss told her that Moss was getting the cocaine from Tim Sexton. Elizabeth Sexton testified that she saw Moss receive cocaine from Romans, but she never saw Moss obtain cocaine from Tim Sexton.

Special Agent Lynn Barker of the Internal Revenue Service testified on behalf of the government regarding the three controlled purchases of cocaine made by Edward Goins from Moss. Barker confirmed that during one of the controlled purchases, Goins stated that Big Maudey, also known as Tim Sexton, was supposed to have some good [cocaine], to which Moss replied "where do you think mine's coming from?" Barker also confirmed that, after the controlled buys, Moss was indicted and pled guilty to the conspiracy charge. During Barker's testimony, a portion of the transcript from Moss's plea hearing and the factual basis filed by the government to support her plea were read to the jury by counsel for the government and entered into evidence. The portion of the November 15, 2000, trial transcript which contained the Moss's appearance as a witness in the case against Sexton, Legg and Romans was also read to the jury and entered into evidence. Barker explained that a factual basis must be supplied to the district court before the court may accept a guilty plea. The jury was also informed that a district court is required to inquire and satisfy itself that there is a factual basis for a guilty plea before it may accept such a plea.

After the government rested, Moss moved for judgment of acquittal, but the district court denied the motion. Moss then testified in her own defense. Moss admitted that she made three cocaine sales to Edward Goins and stated that these sales occurred at the Rhode House bar where she worked at that time. Moss also confirmed that after she was arrested and prosecuted, she pled guilty to a conspiracy. According to Moss, at the time she pled guilty she understood a conspiracy to occur when "one or two or more people combine together to commit a crime." Moss testified that she assumed she was pleading guilty to a conspiracy with Goins, not Sexton, Legg or Romans. Once again, Moss denied having any drug dealings with Sexton, Legg or Romans.

Moss testified that at the time of her plea, her attorney informed her that the

court would ask her about a document referred to as a factual basis and told her to inform the court that she had seen the document. She testified that her attorney told her that he would bring it to her attention later. Moss admitted that she lied to the court when asked whether she had read the factual basis. Moss then went through the factual basis line by line and admitted that the government had evidence as set forth in the factual basis. For example, the factual basis stated that "the evidence would show that defendant ... obtained cocaine from Tim Sexton, James Legg and other individuals, including Randall Trevino, who operated at the behest of Legg." Moss explained that it was true that the government had evidence that she obtained cocaine from Sexton, Legg and Romans such as the testimony of Elizabeth Sexton and Darlene Goins (Angela Darlene Estill). Despite this evidence, Moss testified that she did not in fact obtain cocaine from those individuals.

According to Moss, prior to testifying at the trial of Sexton, Legg and Romans, she spoke with her attorney and understood that she would not be required to testify. Moss testified that her attorney "said that [she] would not testify that day and that [they] would put in a motion to withdraw [her] guilty plea to not guilty."

On cross-examination, Moss stated that she had only sold cocaine three times in her life and those were the three times she sold to Goins, the government's informant. Moss admitted that she was a heavy cocaine user and stated that she used between fifty and a hundred dollars worth of cocaine per day. Moss claimed that she was able to afford her habit on the money that she made at the bar because she received most of the cocaine in the form of tips. Moss admitted to using cocaine with Legg, but denied that she ever received any cocaine from him.

Moss testified that while her attorney had a good reputation for being a competent attorney, he broke the law when he advised her to lie under oath. Moss admitted that she knew it was a lie to tell the court that she had read the factual basis when she had not done so. Moss acknowledged that she had been fully informed of all of her options by the prosecutor, her attorney, and the court when she refused to testify against Sexton, Legg and Romans. Moss also conceded that despite the statements about withdrawing her plea, she has never attempted to withdraw her plea or even talked to her new attorney about such an option. Finally, Moss admitted that she has never told anyone where she obtained the cocaine she sold to Goins and that she refuses to provide that information.

After Moss testified, the case was submitted to the jury. The jury reached a verdict of guilty as to one count of criminal contempt and four counts of perjury. On January 18, 2002, the district court sentenced Moss to thirty-seven months imprisonment and three years supervised release. This timely appeal followed.

## II.

Moss first argues that the district court erred in denying her motion to dismiss the criminal contempt count of the indictment. Moss claims that the criminal contempt count should have been dismissed because her refusal to testify was protected by her plea agreement. The sufficiency of an indictment is reviewed *de novo*. *United States v. DeZarn*, 157 F.3d 1042, 1046 (6th Cir.1998). Contrary to Moss's assertion, her plea agreement contains no provision stating that she would not be called to testify at a later proceeding. During the trial of Moss's co-conspirators, counsel for

Moss claimed that Moss had a right to refuse to testify because the time limitation for filing a petition to withdraw her plea agreement had not yet expired. Moss cites no authority in support of this claim. The district court held that it was unfamiliar with such a legal privilege. In addition, Sixth Circuit authority reveals no support for the purported privilege. Therefore, the district court did not err in refusing to dismiss the criminal contempt count for any reason relating to Moss's plea agreement.

■ Moss also claims that the criminal contempt count should have been dismissed because she actually testified at the trial of Legg, Sexton and Romans. While Moss did provide partial testimony, the record demonstrates that she refused to complete her testimony, refused to answer many of the government's questions, and did not allow herself to be the subject of cross-examination. The district court informed Moss that her refusal to complete her testimony was in violation of its order, and Moss accepted the consequences of her refusal to complete her testimony. Moss has failed to cite any authority supporting her claim that partial testimony fulfills a court-ordered requirement to testify. As the Supreme Court has stated, a "witness ... cannot 'pick and choose' the questions to which an answer will be given. The management of the trial rests with the judge and no party can be permitted to usurp that function." *Yates v. United States*, 355 U.S. 66, 73, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957).

■ Moss contends that the district court further erred in refusing to dismiss the indictment on the ground of prosecutorial vindictiveness. This court reviews a district court's denial of a motion to dismiss an indictment on grounds of prosecutorial vindictiveness for abuse of discretion. *United States v. Suarez*, 263 F.3d 468, 476 (6th Cir.2001). "[I]n order to show vindictive prosecution there must be (1) exercise of a protected right; (2) a prosecutorial stake in the exercise of that right; (3) unreasonableness of the prosecutor's conduct; (4) the intent to punish the defendant for exercise of the protected right." *Id.* at 479. Moss has failed to present evidence sufficient to establish any of the above elements.

■ First, Moss has submitted no evidence that she was exercising a protected right. With regard to the criminal contempt count, as noted above, Moss has failed to establish that she asserted a legally protected right when she refused to testify. Her testimony was subject to immunity and therefore was not protected by the Fifth Amendment. With regard to the perjury charges, Moss fails to demonstrate that she exercised a protected right when she testified regarding her statements made during the plea colloquy or regarding her understanding of the factual basis. Because Moss has failed to present evidence that she was asserting a protected right, she cannot establish the fourth element that the prosecution intended to punish her for exercising such a right. Moss has also failed to present evidence that the prosecutor had any "stake" in deterring her alleged rights or that the prosecutor's conduct was unreasonable. Instead, Moss's argument relates to the merits of the charges. According to the Supreme Court, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute ... generally rests entirely within his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). The record demonstrates that the prosecution had probable cause to pursue the criminal contempt and perjury charges and was not unreasonable in doing so.

Accordingly, the district court did not abuse its discretion in denying Moss's motion to dismiss the indictment on the basis of prosecutorial vindictiveness.

In the section of her brief discussing prosecutorial vindictiveness, Moss also alleges that the confidential informant, Edward Goins, was discovered to have falsified a tape recording of at least one conversation with Moss. Moss claims that the government's decision to pursue charges against Moss despite its knowledge of the false evidence shows vindictiveness. Moss provides no detailed information regarding the allegedly falsified evidence and does not allege that the tainted evidence was used in her prosecution in any manner. Moss has admitted that she sold cocaine to Goins on three occasions, and she did not contest the accuracy of the recording transcripts presented at trial. Therefore, the allegedly falsified evidence does not support Moss's claim of prosecutorial vindictiveness.

■ Moss next claims that the district court erred in denying her motion to dismiss the perjury counts of the indictment because her allegedly perjurious statements were not material. As previously noted, the sufficiency of the indictment is reviewed *de novo. DeZarn,* 157 F.3d at 1046. The crime of perjury depends upon both the clarity of the questioning itself and the knowledge and reasonable understanding of the testifier as to what is meant by the questioning. *Id.* at 1044. Therefore, "a defendant may be found guilty of perjury if a jury could find beyond a reasonable doubt from the evidence presented that the defendant knew what the question meant and gave knowingly untruthful and materially misleading answers in response." *Id.*

A statement is material if it has "a natural tendency to influence, or [be] capable of influencing, the decision of the decision-making body to which it was addressed." *United States v. Gaudin,* 515 U.S. 506, 509, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995) (quotation omitted). The test for materiality, however, "does not require a showing that the outcome of the proceedings in which the statement was uttered would have been different had the defendant answered truthfully." *DeZarn,* 157 F.3d at 1051. In its order denying Moss's motion to dismiss the indictment based on materiality, the district court stated that "[t]he materiality of an allegedly perjurious statement is a matter of fact to be determined by the fact finder." The district court cited the Supreme Court's opinion in *Gaudin* in which the Court held that materiality is a question for the jury to determine. 515 U.S. at 518–19. Moss has failed to cite any contrary authority. Furthermore, Moss does not claim that the jury lacked sufficient evidence to find that the statements were material. *See DeZarn,* 157 F.3d at 1051 (considering defendant's argument that his conviction for perjury should be reversed because the government did not present sufficient evidence at trial to sustain a finding that his allegedly false statements were material). Because materiality is a question for the jury, the district court was correct in concluding that the indictment could not be dismissed based on immateriality.

Further, Moss claims that the district court should have dismissed the perjury counts because her statements were literally true, a claim we review *de novo. DeZarn,* 157 F.3d at 1046. The "literal truth" defense as explained by the Supreme Court in *Bronston v. United States,* 409 U.S. 352, 93 S.Ct. 595, 34 L.Ed.2d 568 (1973), "applies in cases where a perjury defendant responds to a question with an *unresponsive* answer." *DeZarn,* 157 F.3d at 1051. The Court in *Bronston* noted

that "[a]n unresponsive answer is unique ... because its unresponsiveness ... prevents it from being tested in the context of the question—unless there is speculation as to what the unresponsive answer 'implies'." *Bronston,* 409 U.S. at 355 n. 3. Therefore, because an unresponsive answer requires speculation regarding what the answer "implies," "there cannot be a finding beyond a reasonable doubt that the answer is untruthful." *DeZarn,* 157 F.3d at 1048. However, if "the answer given is responsive to the question asked and 'it is entirely reasonable to expect a defendant to have understood the terms used in the question,' a charge of perjury may not be dismissed for insufficiency." *Id.* (quoting *United States v. Slawik,* 548 F.2d 75, 86 (3rd Cir.1977)). "Absent fundamental ambiguity or impreciseness in the questioning, the meaning and truthfulness of the declarant's answer is for the jury." *Id.* (quoting *United States v. Robbins,* 997 F.2d 390, 395 (8th Cir.1993)). Furthermore, "when questions and answers proceed on a false premise of which the defendant is aware, he may not evade the true intent of the line of questioning by stacking literally true answers on top of the false premise." *Id.* at 1051.

The district court held that Moss's argument that her statements were literally true failed because her claim that her statements were literally true was based on a false premise. The district court asked Moss whether she had seen the factual basis and whether the factual basis was true and correct "as it pertains to you" and "insofar as you know." Moss responded that she had seen the factual basis and that it was true and correct. Moss does not contest that she lied when the district court asked her whether she had read the factual basis. Therefore, Moss cannot provide a literally true answer regarding whether the factual basis was true and correct as it pertained to her when she had never read or seen the factual basis.

Moss concentrates her argument on the aspects of the factual basis that she has admitted were true. For example, Moss claims that the factual basis stated that she sold cocaine, and "[s]he has admitted and has been convicted of that." Moss, however, claims that the factual basis does not state that she engaged in a conspiracy with Sexton, Legg or Romans, or that she ever received cocaine from them, and, therefore, her statement that the factual basis was correct as it pertains to her was "literally true." Moss misstates the content of the factual basis. The factual basis clearly recites that "during the course of the conspiracy" Moss obtained cocaine from Sexton and Legg. The factual basis also states that "cocaine which was purchased from members of the conspiracy, including Legg, Moss and Romans" was recovered on Legg's property. Thus, the factual basis sets forth that Moss was a member of a conspiracy with Legg and Romans and that she had obtained cocaine from Sexton and Legg.

With regard to the perjury counts relating to Moss's testimony at the trial of Sexton, Legg and Romans, Moss has failed to present any evidence, other than her own testimony, that her statements denying that she obtained cocaine from them and that she was not involved in a conspiracy with them were literally true. Moss makes no attempt to establish a literal truth defense beyond the counts relating to the factual basis. The indictment properly alleged and the overwhelming evidence established that Moss's statements were false. Accordingly, the district court did not err in denying Moss's motion to dismiss the perjury counts of the indictment.

Finally, Moss claims that the district court erred in denying her request for a jury instruction regarding a reliance on counsel defense. "A district court must grant an instruction on the defendant's theory of the case if the theory has some support in the evidence and the law." *United States v. Morgan,* 216 F.3d 557, 566 (6th Cir.2000) (citations omitted). However, an instruction should not be given if it "lacks evidentiary support or is based on speculation." *Id.; United States v. Lindo,* 18 F.3d 353, 356 (6th Cir.1994). When reviewing a district court's decision not to give a jury instruction, this court will reverse "only if it finds that the proposed instruction is correct, is not substantially covered by the charge, and is so important that failure to give it substantially impairs the defense." *Morgan,* 216 F.3d at 566–67.

■ To establish a defense of reliance on counsel, the defendant must show (1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice. *Lindo,* 18 F.3d at 356. In *Lindo,* this court stated that " '[a]ny foundation in the evidence sufficient to bring the issue into the case' is also sufficient to merit a jury instruction on reliance." *Id.* (quoting *United States v. Duncan,* 850 F.2d 1104, 1117 (6th Cir.1988))(additional quotation omitted). Therefore, a defendant who identifies any evidence supporting the conclusion that she has fully disclosed all pertinent facts to her counsel, and that she has relied in good faith on counsel's advice, is entitled to a reliance jury instruction. *Id.* (citing *Duncan* and *United States v. Kenney,* 911 F.2d 315, 322 (9th Cir.1990) (holding that "[i]n order to qualify for an advice of counsel instruction the appellant must show that there was full disclosure to the attorney of all material facts, and that he relied

in good faith on the attorney's recommended course of conduct")).

In the instant case, Moss has failed to demonstrate a sufficient foundation in the evidence to merit a good faith reliance on counsel jury instruction. While Moss testified that she relied on her attorney's advice that she could refuse to testify based on a legal privilege, she cannot point to evidence that she did so in good faith. The record shows that the district court specifically advised Moss that her counsel was incorrect and that she had no legal privilege to refuse to testify. The district court ordered her to testify and explained to her in detail that her refusal to testify would result in her being imprisoned for civil contempt and could result in a criminal contempt prosecution. Moss acknowledged that her legal options had been set forth for her by the district court and the prosecutor. Therefore, Moss did not rely in good faith on her attorney's advice to refuse to testify once the district court informed her that she would be in violation of a court order and that she would held in contempt.

Furthermore, reliance on counsel's advice in refusing to obey a court order to testify when the court has granted immunity is not a defense to criminal contempt. In *United States v. Armstrong,* 781 F.2d 700, 706 (9th Cir.1986), the Ninth Circuit found that defendants' good faith reliance on the advice of counsel to disobey a court order to testify does not negate the willfulness element of a criminal contempt charge. The *Armstrong* court noted that the defendants knew that they could be punished for refusing to obey the court order and found that allowing them to disobey a court order in reliance on the advice of counsel "would in effect do away with the judicial grant of immunity because a witness given immunity could still avoid testifying if his attorney advised him

to remain silent." *Id.* at 707 (quotation omitted); *see also United States v. Underwood,* 880 F.2d 612, 618 (1st Cir.1989) (holding that "a court may convict a person of contempt for 'willful' disobedience of a court order, even though the person believes in good faith that the court order is unlawful"). The circumstances present in *Armstrong* are present in this case. Accordingly, the district court did not err in refusing to instruct the jury on a good faith reliance on counsel theory.

### III.

For all the reasons set forth above, we affirm the judgment of the district court.