**UNITED STATES of America,**
**Plaintiff,**

**v.**

**David BENNETT, Defendant.**

**No. 03–20006–BC.**

United States District Court,
E.D. Michigan,
Northern Division.

Sept. 30, 2003.

Janet L. Parker, U.S. Attorney, U.S. Attorneys Office Bay City, MI, for Plaintiff.

George C. Bush, Saginaw, MI, for Defendant.

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND STRIKE PORTIONS OF INDICTMENT

LAWSON, District Judge.

David Bennett was indicted for criminal offenses relating to his possession of and attempt to purchase firearms while being a prohibited person. Bennett had been under indictment for an unrelated federal felony during the relevant time period, and eventually found guilty by a jury, although his conviction later was set aside for want of evidence. The matter is presently before the Court on two motions that the defendant filed. In one, he seeks to suppress firearms seized from his residence by federal ATF officers and incriminating statements the defendant made in the absence of *Miranda* warnings. In the second, he asks the Court to dismiss count two from the indictment in this case, and also to strike certain language from count one of the indictment, arguing that this Court's post-trial dismissal of the predicate felony prosecution precludes reliance upon any aspect of that case to argue in this matter that the defendant operated under a firearms disability at any time.

The government has responded to the motions, conceding that the statements challenged by the defendant are inadmissible at trial, but contending that the firearms were properly seized and that the defendant is subject to liability for attempting to purchase and for possessing firearms regardless of whether his conviction was otherwise violative of the Due Process Clause of the Fifth Amendment.

The Court held a hearing on the motions on August 13, 2003 at which the parties presented their arguments. At that time, the Court granted the parties additional time to file supplemental briefs. That time has expired and the matter is now ready for decision. The Court will suppress the statements, but finds that the seized items ought not to be excluded under the Fourth Amendment. Further, the Court concludes that a jury verdict, later set aside, nonetheless is sufficient to constitute a predicate "conviction" under federal firearms laws. Accordingly, the motion to suppress the firearms and the motion to strike and dismiss portions of the indictment will be denied.

## I.

The defendant originally was haled before this Court by a grand jury indictment in case number 01–20027, charging him with conspiracy to defraud the United States Government, contrary to 18 U.S.C. § 371, and knowingly making or causing a false statement to be made to the Social Security Administration, contrary to 42 U.S.C. § 408(a)(3). After a trial that took place in April and May 2002, the jury acquitted the defendant of conspiracy but convicted him of the second charge. On May 28, 2003, this Court granted the defendant's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, and dismissed the remaining charge.

Between the time he was tried and ultimately acquitted, however, the defendant apparently attempted to purchase a Browning shotgun from a Gander Mountain store, which is a federally-licensed firearm dealer. Application & Affidavit for Search Warrant, 03–X–10053–BC, ¶ 4. When filling out paperwork for the purchase, Bennett was asked two questions. Item 12(b) asked, "Are you under indictment or information in any court for a **felony,** or any other crime, for which the judge could imprison you for more than one year?" Item 12(c) asked, "Have you been convicted in any court of a **felony,** or any other crime, for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation?" Bennett purportedly answered both questions in the negative. *Id.* ¶ 6. Bennett's attempted purchase was thwarted by the National Instant Check System (NICS) and never completed. *Id.* ¶ 7. ATF agents verified Bennett's identity with the salesman who was involved with this transaction. *Id.* ¶ 8.

ATF agents also learned that Bennett had obtained hunting licenses for waterfowl and small game for the year 2002. *Id.* ¶ 9. Special Agent Jeffrey Maggard states in the search warrant affidavit that shotguns tend to be used to hunt these animals, and that various other animals can be hunted well into the spring or even year-round. *Ibid.* In light of the issuance of these hunting licenses, Bennett's inability to purchase a shotgun, and Agent Maggard's belief that firearms were relatively easy to obtain from individuals who were not licensed to sell or distribute firearms, Agent Maggard stated his belief that it was likely Bennett may have acquired a firearm to hunt animals in the fall of 2002. *Id.* ¶¶ 10, 11.

Maggard further averred that "based on [his] training and experience, people who

possess firearms keep the firearms in their residences," along with various other items incidental to the ownership and maintenance of firearms. *Id.* ¶ 12. Because the Pretrial Services Agency had reported the defendant's address to be 4351 S. Baldour Road in Hemlock, Michigan, and Bennett had also listed that residence as his address on the ATF form filled out at Gander Mountain, the affiant sought an affidavit to search this residence for evidence of firearms. *Id.* ¶¶ 13, 14.

Magistrate Judge Charles E. Binder authorized the search of the Bennett residence upon this affidavit on February 24, 2003. On February 28, 2003, agents from the Bureau of Alcohol, Tobacco, and Firearms (ATF) arrested the defendant at his office and proceeded to search his residence at the South Baldour Road address, where nine firearms were recovered. Def.'s M. to Suppress at 1. Prior to the search, Agent Maggard, allegedly without administering *Miranda* warnings, sought information from this defendant as to the number of firearms that were stored at the residence. The defendant replied that eight firearms could be found there. After nine firearms were seized, Agent Maggard, again without reading the defendant his *Miranda* warnings, inquired about the number of firearms at the residence. The defendant then apparently acknowledged that nine firearms, not eight, were located there, and also stated that he had completed the ATF form without reading it and without any intent to deceive.

The grand jury subsequently returned the indictment in this case charging the defendant with making false statements, likely to deceive, to a federally-licensed firearm dealer while attempting to purchase a firearm, contrary to 18 U.S.C. § 922(a)(6) and 3147(1); and knowing possession of multiple firearms having been convicted of a felony and while on federal bond, contrary to 18 U.S.C. § 922(g)(1) and 3147(1).

## II.

In opposing the suppression motion, the government makes a token argument based on the defendant's lack of "standing." It is true that a defendant must demonstrate a reasonable expectation of privacy in the place searched or the thing seized in order to assert a violation of his Fourth Amendment rights. *See Rakas v. Illinois,* 439 U.S. 128, 134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *United States v. Delgado,* 121 F.Supp.2d 631, 637 (E.D.Mich.2000). However, ownership of the area being searched is the quintessential basis upon which a reasonable expectation of privacy can be founded. *See United States v. Karo,* 468 U.S. 705, 716 & n. 4, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984); *Cash v. Williams,* 455 F.2d 1227, 1230 (6th Cir.1972) (finding that the defendant had standing to challenge search of automobile that he owned, even though he disclaimed ownership of items therein). The entire premise of the government's probable cause argument in this case is that "people who possess firearms keep firearms in their residences," Application & Affidavit for Search Warrant, 03–X–10053–BC, ¶ 12, and that Bennett lived in the residence that the agents searched. The lack-of-standing argument that the government puts forth here does little to advance consideration of the legitimate issues raised by the defendant's motion.

The defendant argues that Agent Maggard's affidavit was not sufficient to establish probable cause to issue the search warrant. The Fourth Amendment provides that no warrants shall be issued without probable cause. U.S. Const. amend. IV; *see Mapp v. Ohio,* 367 U.S. 643, 654–55, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). "The test for probable cause is

simply whether there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Miggins,* 302 F.3d 384, 393 (6th Cir.2002) (citations omitted). A magistrate properly reaches this conclusion only when the supporting affidavit sets forth sufficient facts to show that probable cause exists. *United States v. Weaver,* 99 F.3d 1372, 1377 (6th Cir.1996) (citations omitted). As the Sixth Circuit has explained, the concept of probable cause is not easily reducible to a simple formula:

> Probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion," that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." This determination does not lend itself to the application of "rigid legal rules." Rather, the probable cause standard is a " 'practical non-technical conception [wherein] ... we deal with probabilities ... [which are] the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " Stated otherwise, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules...."

*United States v. King,* 227 F.3d 732, 739 (6th Cir.2000) (citations omitted).

■ In a motion challenging the adequacy of a search warrant affidavit, this Court must determine "whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Davidson,* 936 F.2d 856, 859 (6th Cir.1991) (internal quotes and citation omitted). The defendant argues that no such basis can be found in Agent Maggard's affidavit because the information describing the at-tempted purchase of the shotgun and the acquisition of the hunting licenses is too remote to suggest that firearms would still be located in the residence several months later.

Commentators have noted that probable cause to search "is concerned with facts relating to a presently existing condition." W. LaFave, Search and Seizure § 3.7 at 338 (3d ed.1996). Consequently, there arises the "unique problem of whether the probable cause [that] once existed has grown 'stale.' " *Id.* at 339. The Supreme Court has stated that the resolution of such questions, like the determination of probable cause itself, "must be determined by the circumstances of each case." *Sgro v. United States,* 287 U.S. 206, 210–11, 53 S.Ct. 138, 77 L.Ed. 260 (1932). In *United States v. Spikes,* 158 F.3d 913, 923 (6th Cir.1998), the Sixth Circuit suggested four considerations that a reviewing court might take into account when assessing a staleness claim: (1) the nature of the crime, (2) the criminal himself, (3) the item(s) to be seized, and (4) the place to be searched. The issue is to be resolved not by arbitrarily counting days on a calendar, but rather by determining whether the information offered in the affidavit, taking into account both its age and any corroboration, suffices to establish probable cause to search a particular place. *Id.* at 923–24.

■ In this case, there is no evidence contained in the affidavit that Bennett actually possessed a firearm. There is only a statement describing his failed attempt to purchase a shotgun by submitting a form dated August 28, 2002 to a retail gun seller, which tends to prove no possession at all. The agent's observation that firearms can be acquired on the black market adds no helpful facts to the probable cause calculus absent some indication that Bennett actually attempted to procure a firearm in such a fashion. Bennett himself

was not involved in any continuing criminal enterprise in which weapons likely would be involved, such as a drug conspiracy. *See United States v. Graham,* 275 F.3d 490, 501 (6th Cir.2001). Firearms themselves are objects of a "durable nature," *id.* at 503, and if there was any evidence put forth in the affidavit that Bennett ever owned a gun, it might be reasonable to infer that he still kept it in his house. *See United States v. Yates,* 132 F.Supp.2d 559, 565 (E.D.Mich.2001) (affirming the existence of probable cause to issue warrant to search for records of old drug transactions since records "by their nature are designed to endure"). But there is no evidence suggesting that Bennett ever owned or possessed a firearm, only that he could not obtain one. The agent's averment that Bennett obtained a license to hunt waterfoul and small game in 2002 is silent as to when the license was purchased. This added fact, taken together with the other information in the affidavit, fails to provide a substantial basis for finding probable cause to believe that a firearm would be found in Bennett's house in February 2003.

■■■ Evidence seized pursuant to a warrant issued in violation of the Fourth Amendment is not subject to the exclusionary rule when the officer relies on the search warrant in good faith. *United States v. Leon,* 468 U.S. 897, 905, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The "good faith" exception to the exclusionary rule will not apply where the search warrant affiant misled the magistrate with knowingly false information; the magistrate was not neutral and detached, and acted as a mere "rubber stamp" for the police; the affidavit was nothing more than a "bare bones" document; or the warrant itself failed to describe the place to be searched or the thing to be seized. *Id.* at 914–15, 104 S.Ct. 3405. The defendant contends that Agent Maggart's affidavit was a "bare bones" affidavit and that the Court should not apply the good faith exception.

■■ A "bare bones" affidavit is one "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923, 104 S.Ct. 3405. Such affidavits "state[ ] suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Weaver,* 99 F.3d 1372, 1378 (6th Cir.1996).

The Sixth Circuit has construed this exception narrowly. In *United States v. Schultz,* 14 F.3d 1093 (6th Cir.1994), for example, the court found that an affidavit offered in support of a request for a warrant to search a safe deposit box was deficient because it failed to connect the defendant's illegal activity to the box itself. Nevertheless, the court concluded that the officer's belief in the warrant's validity was not "entirely unreasonable" because he had evidence to believe that criminal activity had occurred *somewhere,* even if none of it pointed to the safe deposit boxes in question:

> But we cannot say that this warrant was "so lacking." As previously discussed, Officer Ideker certainly had probable cause to believe that Schultz had committed a crime. Moreover, although we have held that his "training and experience" were not sufficient to establish a nexus of probable cause between that crime and the safe deposit boxes, the connection was not so remote as to trip on the "so lacking" hurdle.

*Schultz,* 14 F.3d at 1098. In *United States v. Van Shutters,* 163 F.3d 331, 337 (6th Cir.1998), the Sixth Circuit found "that only a police officer with extraordinary legal training would have detected any deficiencies" in the warrant, which admittedly gave no reason why incriminating evidence would be found in a particular residence. The Court explained:

First, the affidavit states that the affiant has personal knowledge that Shutters had been "involved in an on-going criminal enterprises [sic.]" It further describes the suspected criminal activities (fraudulent purchases of automobiles) and the items Shutters used to facilitate his scheme (counterfeit checks, vehicle titles, etc.). Moreover, the affidavit also described the location of the Tennessee Residence with such particularity that a common sense inference is that the affiant visited the premises himself and presumably either observed Shutters in the residence, or determined through investigation that Shutters frequented the premises. Additionally, the affidavit also states that the affiant has been a law enforcement official for 17 years and a Tennessee Highway Patrol Investigator for ten years. Also, the affidavit stated that the suspect had been identified in a photo array by the victims of his crimes.

*Id.* at 337–38 (citations omitted). The Court also cited to *Schultz,* noting that the combination of knowledge of wrongdoing by the defendant and a hunch borne of experience that evidence would be found in a particular place was sufficient to demonstrate good faith reliance in that case. *Id.* at 338. Finally, there is the Sixth Circuit's decision in *United States v. Watkins,* 179 F.3d 489 (6th Cir.1999), where the Court relied on both *Schultz* and *Van Shutters* to find a good faith basis to uphold a defective warrant. There, the warrant made no effort to describe with particularity the residence that the officers sought to search. Nonetheless, because the officer "had probable cause to believe that [the defendant] had committed a crime," *Watkins* concluded that an officer would have no way of knowing that the search was not appropriate. *Id.* at 498.

■ In this case, Agent Maggart had evidence that Bennett committed a crime when he made a false declaration on an application to purchase a firearm. He apparently had a hunch that further wrongdoing was afoot, so he presented his facts, without embellishment, to a federal magistrate upon whose determination he relied. That the magistrate erred does not undercut Maggart's good-faith reliance on the search warrant, which fortified his hunch and validated his actions. The Court finds that the good faith exception to the exclusionary rule applies in this case, and requires the denial of the defendant's motion to suppress evidence.

### III.

The defendant's motion to strike certain language from count one and dismiss count two of the indictment is premised on what the defendant perceives to be the nullifying effect of the decision in his favor on his post-verdict motion to dismiss the predicate felony. He is charged under 18 U.S.C. § 922(g)(1), which states:

It shall be unlawful for any person ... who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

However, he points to language in 18 U.S.C. § 921(a)(20)(B) that he deems applicable to his circumstances: "Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms." *Ibid.*

The defendant acknowledges a substantial line of authority that establishes the

rule that the status of a defendant's prior record on the date of the possessory offense is controlling for the purpose of determining a violation of 18 U.S.C. § 922(g)(1). For instance, the Supreme Court held in *Lewis v. United States,* 445 U.S. 55, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), that a conviction that might be constitutionally infirm still qualifies as a predicate offense under 18 U.S.C. § 1202(a)(1), a gun control statute similar to and partially overlapping Section 922(g) and (b). "No modifier is present, and nothing suggests any restriction on the scope of the term 'convicted.' ... No exception ... is made for a person whose outstanding felony conviction ultimately might turn out to be invalid for any reason." *Id.* at 61–62, 100 S.Ct. 915. Similarly, in *Dickerson v. New Banner Inst., Inc.,* 460 U.S. 103, 112–20, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983), the Court made clear that by omitting any reference to the availability of state remedies for voiding or expunging state convictions, Congress had intended that felons be disabled from owning firearms, even if no judgment of conviction had been entered and the conviction, to the extent it resulted from a plea of guilt, has been expunged.

In *United States v. Morgan,* 216 F.3d 557, 559 (6th Cir.2000), the defendant was arrested in 1997 while in possession of a machine gun. Almost three decades earlier, he had been convicted of burglary and sentenced to three years imprisonment. At trial, the government successfully tendered a motion in limine to preclude the defendant from introducing evidence that a state court judge had restored his right to possess firearms. *Id.* at 561. On appeal, Morgan argued that forbidding the jury to hear this evidence violated his constitutional rights. *Id.* at 564–65. The Sixth Circuit disagreed. *Id.* at 565–66. Although it recognized that the Supreme Court's intervening decision in *Custis v. United States,* 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d

517 (1994), had held that a felon could collaterally attack a sentencing enhancement if the prior conviction was subsequently vacated, the *Morgan* panel rejected the First Circuit's conclusion in *United States v. Pettiford,* 101 F.3d 199 (1st Cir. 1996), that the same reasoning should be applied to permit a felon convicted of violating the terms of a firearms disability to collaterally attack his predicate conviction. *Morgan,* 216 F.3d at 565.

This rule has been consistently followed in this Circuit. *See United States v. Baker,* 197 F.3d 211, 216–17 (6th Cir.1999) (refusing to permit a defendant to collaterally attack his predicate conviction to a felon-in-possession charge on the ground that the prior proceeding lacked proper due process safeguards); *United States v. Steverson,* 230 F.3d 221, 224–26 (6th Cir. 2000). Most recently, the court of appeals reaffirmed the rule that "[t]he defendant's status on the date of the offense controls whether the felon in possession laws have been violated." *United States v. Olender,* 338 F.3d 629, 636 (6th Cir.2003).

The defendant attempts to distinguish this authority on the ground that he made his Rule 29 motion on the predicate offense before his case was submitted to the jury. He reasons that, contrary to *Dickerson,* where the Court found that a guilty plea was conclusive because the trial court had nothing to do other than to pronounce sentence, this Court was obligated to examine the evidence, determine the sufficiency thereof, and then enter a judgment either of conviction or acquittal. Thus, the argument goes, the jury's verdict could not be conclusive in this instance without ratification by a judgment of conviction, and the Court's entry of judgment on the defendant's behavior nullified the jury's conviction retroactive to the date of the original motion.

The defendant argues further that his status during the interim between the jury's verdict and the Court's entry of judgment remained as it was before trial. He was still under indictment and bond conditions, pending the Court's decision but no pre-sentence investigation had been initiated and he was not otherwise restricted or penalized. Finally, to the extent that the Court could find the defendant's status during the interim to be unclear, the defendant submits that such lack of clarity constitutes an ambiguity requiring application of the rule of lenity in this favor.

Although the Sixth Circuit has not ruled on this precise point, the prevailing authority in other circuits conclude that a jury's adjudication of guilt was sufficient to constitute a conviction of the defendant under Section 922(g). *See United States v. Faison,* 61 F.3d 22, 23 (11th Cir.1995) (holding that a defendant convicted of a felony could be convicted of unlawful possession of a firearm by a felon while he was out on bond awaiting sentencing); *United States v. Dougherty,* 895 F.2d 399, 402–03 (7th Cir.1990) (holding a jury verdict to constitute a conviction under an analogous provision). *See also* Black's Law Dictionary 271 (7th ed.2000) (defining "conviction" as "the state of having been proved guilty" or "[t]he judgment (as by a jury verdict) that a person is guilty of a crime"). A pending Rule 29 motion certainly requires further action by the Court before sentencing can occur, but the pendency of the motion itself does not alter the defendant's status until a ruling is made. Consequently, the general rule that the defendant's legal status on the date of firearm possession governs in this case.

■ The defendant's argument that this Court's grant of his Rule 29 motion retroactively removes any firearm disability otherwise imposed by the firearms conviction is foreclosed by *Lewis* and *Morgan* and their progeny in this Circuit. Section 921(a)(20) provides that a conviction that has been set aside cannot be a predicate conviction for the purposes of the firearms laws, but does not "does not provide that such a conviction was not disabling between the time it was obtained and the time it was set aside." *United States v. Kahoe,* 134 F.3d 1230, 1233 (4th Cir.1998). For the same reason, any confusion about the defendant's status cannot be remedied by application of the rule of lenity, which is appropriate to apply when the court detects grave ambiguities in the statutory language, not the defendant's ability to apply it to his specific situation. *See Morgan,* 216 F.3d at 565 ("The rule of lenity does not apply because the statute is unambiguous."). An ambiguity sufficient to apply the rule of lenity arises only when a statute remains unclear after the court has considered the provision's plain meaning, structure, and legislative history. *United States v. Choice,* 201 F.3d 837, 840 (6th Cir.2000). In light of *Lewis,* the *Dickerson* Court conducted just this sort of inquiry, however, and found no indication that Congress had any intention of qualifying the definition of "conviction" in a manner that required a formal judgment. *See* 460 U.S. at 113 n. 7, 103 S.Ct. 986. Congress subsequently altered its definition of "conviction" to overrule *Dickerson* in part, but did not add any provision requiring a formal judgment of conviction. Furthermore, the Sixth Circuit has also made clear its belief that the rule of lenity is not applicable to Section 922. *See Morgan,* 216 F.3d at 565–66.

The Court, therefore, finds no basis upon which to strike any language from the indictment or dismiss any of the counts.

## IV.

The Court concludes that the evidence seized pursuant to the invalid search war-

rant is saved by the "good faith" exception to the exclusionary rule. In addition, the subsequent dismissal of the predicate felony in a previous case does not alter the status of the defendant's criminal record on the date of the firearm possession in this case.

Accordingly, it is **ORDERED** that the defendant's motion to suppress his statements [dkt # 15] is **GRANTED**. The motion to suppress seized evidence is **DENIED**.

It is further **ORDERED** that the defendant's motion to dismiss count two of the indictment in and to strike certain language from count one of the indictment [dkt # 21] is **DENIED**.