<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 19a0019n.06

No. 17-2176

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellee, | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF MICHIGAN |
| v. | ) | |
| | ) | |
| MARK ALVIN HAMPTON, SR., | ) | OPINION |
| Defendant-Appellant. | ) | |
| | ) | |

**FILED**
Jan 14, 2019
DEBORAH S. HUNT, Clerk

BEFORE: SILER and KETHLEDGE, Circuit Judges; OLIVER, District Judge.[*]

**OLIVER,** District Judge. Mark Alvin Hampton, Sr. ("Hampton") was indicted on one count of being a felon in possession of 40 firearms, in violation of 18 U.S.C. § 922(g)(1), and one count of possession of a silencer, in violation of 26 U.S.C. § 5861(d). Hampton filed a motion to suppress evidence seized pursuant to a search warrant executed at his residence on January 28, 2016, contending that the warrant failed to establish probable cause. The district court held a hearing on the motion on June 2, 2017, after which it denied the motion. Thereafter, Hampton entered a conditional guilty plea to the felon in possession of firearms count, reserving the right to appeal the denial of his motion to suppress. He now appeals the denial of that motion. For the following reasons, we **AFFIRM** the district court's judgment.

---

[*] The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

**I.**

On September 11, 2015, Mark Hampton's father passed away of kidney failure. Up until his death, Hampton cared for his father at their home in concert with hospice care. About five hours after his father's death, Dave Hampton ("Dave"), Hampton's half-brother, filed a report with the county's protective services office indicating that he believed that Hampton had overmedicated their father with morphine. The report was referred to the local police department. The police conducted a thorough investigation, including interviews with Hampton, Dave, and a hospice nurse. The hospice nurse, a friend of Hampton's, reported that Hampton asked her to come to the house the night before his father died. She explained that she became aware that there was an argument over the administering of morphine wherein Hampton's family members did not want morphine to be administered, but Hampton administered it anyway. The nurse reported that, based on her observations, their father did not appear to be overmedicated.

On October 2, 2015, the police obtained a blood sample from the deceased father and sent it to the county's medical examiner for testing. The medical examiner's report concluded that the level of morphine in the father's blood would not cause death and that there was no foul play. On October 6, the county prosecutor concluded that there was no suspicion of any criminal act.

On October 23, 2015, the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") received a telephone call from a person described as "a cooperating individual" (i.e., an informant) who maintained that he personally observed between 25 and 30 firearms stored in gun cabinets in Hampton's residence and that he knew that Hampton regularly carried a handgun on his person and in his vehicle. The informant also stated that he had a personal relationship with Hampton, had been at Hampton's residence numerous times over the years and had visited there as recently as September 2015. In addition, the informant indicated that between March and April 2015, he

used his cellular phone to take photos of several of the firearms at Hampton's residence. He eventually turned the photos over to the ATF. The informant's tip was significant because a background check showed that Hampton had two prior felony convictions.

After receiving the tip, an ATF agent researched the records of the Michigan Department of Natural Resources ("DNR") and discovered that Hampton had purchased 58 hunting licenses between 2011 and 2015. According to the ATF agent, most of the licenses would require the use of a firearm to hunt the animals. The ATF agent also discovered that, on September 19, 2015, Hampton purchased licenses, and obtained endorsements, to hunt turkey, antlerless deer, waterfowl, woodcock, sharp tailed grouse, and migratory birds. Four days later, Hampton purchased a Federal Duck "eStamp" which, according to the DNR, permitted him to hunt geese. This stamp remained valid until February 14, 2016.

ATF Special Agent Mark Semear ("Agent Semear") prepared an affidavit in support of the warrant application to search Hampton's residence. Although Agent Semear identified the informant in the affidavit as a "cooperating individual (CI)," he was then aware that the informant was Hampton's half-brother, Dave. Agent Semear was also aware of the details and results of the prior investigation based on Dave's suspicion that Hampton was overmedicating their father.

On January 25, 2016, Agent Semear presented a search warrant application, including the above-referenced affidavit and Hampton's criminal history, to a United States Magistrate Judge. Agent Semear did not include the information regarding the prior investigation. Based on the information in the application, the Magistrate Judge authorized a search warrant to search Hampton's residence for firearms, ammunition, and other evidence of possession of a firearm, in violation of 18 U.S.C. 922(g). On January 28, 2016, the ATF executed the search warrant and seized several firearms from Hampton's house.

A federal grand jury returned an indictment charging Hampton with: (1) being a felon in possession of a firearm; and (2) possession of a firearm silencer, which was not registered to him. On April 6, 2017, Hampton filed a Motion to Suppress Evidence, contending that the search warrant affidavit failed to establish probable cause for the search because the information was stale. He also requested a hearing, pursuant to *Franks v. Delaware*, 438 U.S. 154, 171 (1978) (a "*Franks* hearing"), based on Agent Semear's omission of the prior investigation. The district court held a hearing regarding the Motion on June 2, 2017. (R. 45.) The district court concluded that all relevant factors weighed against a finding of staleness, that Hampton had not made a "preliminary showing" to justify a *Franks* hearing, and that there was "sufficient probable cause under the totality of the circumstances to support the issuance of the warrant." (R. 45, PageID.300–09.) Thus, the district court denied his Motion.

Thereafter, Hampton entered a conditional plea of guilty to being a felon in possession of firearms and the government dismissed the charge related to the unregistered possession of a firearm silencer. As part of his plea, Hampton specifically reserved the right to challenge the district court's denial of his Motion to Suppress Evidence. On September 25, 2017, judgment was entered against Hampton, and he was sentenced to 66 months' incarceration, to be followed by two years of supervised release. Hampton now appeals the district court's denial of his motion to suppress.

## II.

On appeal of a motion to suppress evidence, this court reviews the lower court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Young*, 847 F.3d 328, 342 (6th Cir. 2017). The same standard of review is applicable to a district court's denial of a *Franks* hearing. *Id.* at 348. A district court's finding that a search warrant affidavit provided

probable cause is a legal conclusion that is reviewed *de novo. United States v. Brown*, 732 F.3d 569, 572 (6th Cir. 2013). This court accords a magistrate judge's decision to grant a search warrant great deference, but a district court's conclusion in reviewing the magistrate's determination are afforded no particular deference. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). Therefore, this court may reverse a decision to grant a warrant only if the issuing magistrate judge arbitrarily exercised her or his authority. *Brown*, 732 F.3d at 573.

Lastly, the decision to "hold [a *Franks*] hearing based upon a challenge to the validity of a search warrant's affidavit, given alleged misstatements and omissions, is committed to the sound discretion of the district court." *Young*, 847 F.3d at 348.

## III.

### A.     Staleness of Information.

Hampton argues that the district court erred when it concluded that the information within the affidavit was not stale and upheld the magistrate judge's determination that there was probable cause to search his residence.

 First, to establish probable cause sufficient to justify the issuance of a search warrant, the applicant seeking the warrant must submit an affidavit to the magistrate that establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Fair probability depends on the totality of the circumstances. *Brooks*, 594 F.3d at 492. When a specific location is to be searched, "the affidavit must establish 'a nexus between the place to be searched and the evidence to be sought.'" *Id.* (quoting *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (*en banc*)). The critical inquiry in determining whether a search is warranted is whether there is reasonable cause to believe that the specific things the agents seek to

search for and seize are located on the property to which entry is sought. *Id*. at 492–93 (citing *United States v. Frazier*, 423 F.3d 526, 532 (6th Cir. 2005)). Further, in establishing probable cause, "the affidavit may not employ stale information." *Id*. at 493 (quotation marks omitted).

Staleness depends on the nature of the crime. *Id*. The purpose of the staleness test is "not to create an arbitrary time limitation within which discovered facts must be presented" to the court issuing a search warrant. *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998). Instead of solely "counting days on a calendar," judges should consider numerous factors, including: (1) whether the character of the crime is a chance encounter or continuous in nature; (2) whether the suspected criminal is nomadic or entrenched; (3) whether the evidence to be seized is perishable or enduring; and (4) whether the place to be searched is a mere forum of convenience or secure operational base. *Id*. After applying these factors, it may be possible for a magistrate judge to properly infer that evidence of wrongdoing still exists on the premises and find sufficient probable cause to issue a warrant, even if a significant period of time has elapsed. *Id.*

Hampton does not dispute the district court's conclusions that: (1) guns are durable goods; (2) firearm possession is continuing in nature; (3) Hampton was not nomadic; and (4) the home to be searched was a secure operational residence. Rather, Hampton claims that the district court erred in its "interpretation of the affidavit as to when the confidential informant had last seen the firearms." (Appellant Br. 12.)

Hampton argues that a "commonsense" reading of the affidavit indicates that the only evidence that could possibly support probable cause were the photos of firearms that the informant, his half-brother, captured on his cellular phone, nearly ten months prior to the actual search. (*Id.*) Thus, Hampton concludes that the evidence is stale because too much time had passed for the informant's information to be reliable. In response, the government argues that it was reasonable

for the magistrate judge to infer that the informant's reference to a September 2015 visit to Hampton's house, only four months prior to the search, was when the informant last saw firearms at Hampton's house.

This court reviews an affidavit based on "a 'totality of the circumstances' determination, rather than a line-by-line scrutiny." *United States v. Greene,* 250 F.3d 471, 479 (6th Cir. 2001) (quoting *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)). Therefore, we agree with the district court's finding that, although the affidavit did not expressly state that the informant had seen firearms on his most recent visit, it was reasonable for the Magistrate to infer that he had. (R. 45, PageID.301.) Indeed, if the informant had not seen firearms on his most recent visit, it is reasonable to infer that he would have said so. A reasonable interpretation of the reference to a September visit is that the informant was attempting to signal to the ATF agent that he saw firearms on that date.

Further, even if the Magistrate Judge had entirely disregarded the informant's mention of a September 2015 visit, the Magistrate Judge would not have acted arbitrarily in finding probable cause. *See, e.g., United States v. Vanderweele*, 545 F. App'x 465, 469 (6th Cir. 2013) (concluding that it was reasonable for the Magistrate court to find that the affidavit's information was fresh enough to supply probable cause, even though it was seven months old); *United States v. Lancaster*, 145 F. App'x. 508, 513 (6th Cir. 2005) (finding two-year-old information that the defendant in the case was seen firing a machine gun was not stale). In this case, the evidence was supported by an informant who had a personal relationship with Hampton, visited Hampton's residence on several occasions, and took pictures of the guns that the informant and the affiant declared were primarily used for hunting. The affidavit explained that since 2011 Hampton purchased more than 58 licenses to hunt various animals and, based on the affiant's training and

experience, most hunters used a firearm to hunt the types of animals endorsed in Hampton's hunting licenses. In addition, the affidavit disclosed that the most recent license, which allowed Hampton to hunt geese, was purchased on September 23, 2015, and was valid until February 14, 2016—twenty days after the search warrant application was submitted. Corroboration of an informant's tip through other sources of information can provide a substantial basis for finding probable cause. *See Illinois v. Gates*, 462 U.S. 213, 245 (1983).

We find that the Magistrate Judge did not arbitrarily exercise his authority in granting the government's warrant to search Hampton's residence for firearms, because even if the informant had not mentioned that he had recently visited Hampton's home in September, the Magistrate Judge could still reasonably infer from the remaining information provided to him that guns would likely be found at Hampton's house. *See id*. at 240.

### B. *Franks* **Hearing.**

Hampton also contends that the district court erred in denying his request for a *Franks* hearing. According to Hampton, if the affidavit had included information surrounding the prior investigation initiated by his half-brother, the Magistrate Judge could not have found probable cause to issue the search warrant. In *Franks*, the Supreme Court established a procedure for defendants to argue that their warrant affidavits contain misrepresentations that undermine the finding of probable cause. 438 U.S. at 171. To be granted a *Franks* hearing, "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id*. However, if there remains sufficient content in the warrant affidavit to support a finding of probable cause, after the material that is the subject of the alleged falsity is set to one side, then no *Franks* hearing is required. *Id.* at 171–72. In other words, the alleged false statement must have been necessary to the finding of probable cause.

In *Mays v. City of Dayton*, this court explained that a *Franks* hearing is also justified when there has been a material omission in an affidavit. 134 F.3d 809, 815 (6th Cir. 1998). However, the standard to obtain a *Franks* hearing for a material omission is higher than a false statement and is only merited in rare cases. *Id*. When there is a material omission of fact, a *Franks* hearing is granted only if the defendant "makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause[.]" *Id*. at 816 (emphasis in the original). What makes this burden more onerous than the inclusion of a false statement is that the defendant must show that the affiant omitted facts with the intention to mislead the magistrate judge. *Id.*

Hampton maintains that Agent Semear's omission was a critical omission. Hampton argues that the circumstances surrounding the omission should have been enough to provide a substantial showing that the omission by Agent Semear was with the intent to mislead and that the informant's lack of "credibility should have been sufficient to call for a *Franks* hearing." (Appellant Br. 15–17.) The government claims that the reason Agent Semear did not include information about the prior investigation in the affidavit was to protect the identity of the informant, not to mislead the Magistrate Judge. The district court concluded that Hampton failed to show that the omission was designed to intentionally mislead the Magistrate Judge. We agree. There is no evidence that suggests the affiant omitted the report intending to mislead the Magistrate, and Hampton certainly has not made the requisite "strong preliminary showing" of an intent to mislead.

Further, the omission regarding the alleged foul play was immaterial to determining probable cause. Not all information in the affiant's possession need be included in the warrant affidavit. *United States v. Garza*, 980 F.2d 546, 551 (9th Cir. 1992). An omission is material if it casts doubt on the existence of probable cause. *See id.* Hampton contends that his half-brother's

only reason for reporting about his firearm possession was because his half-brother was dissatisfied with the outcome of the investigation of their father's death. Hampton maintains that had the affidavit disclosed that his half-brother, the informant, was motivated by anger and animosity, the Magistrate Judge could not have found probable cause. However, there was no evidence that Hampton's half-brother fabricated or lied, or did anything else, to otherwise undermine his own credibility. He merely had suspicions that Hampton was overmedicating their father and decided to report it. The inclusion of the animus between Hampton and his half-brother would not have cast doubt on the existence of probable cause, given the depth of the remaining information in the affidavit. Thus, Hampton has not made a strong preliminary showing that the omission was made with the intention to mislead the Magistrate Judge nor that it was critical to a finding of probable cause. *Mays*, 134 F.3d at 816; *Young*, 847 F.3d at 349 (finding "there was sufficient content in the affidavit regardless of whether [the] information was included or not[]").

## C.      Lawful Hunting Permits.

Lastly, Hampton claims that the district court "erroneously placed significant weight on the existence of [his] hunting licenses" and that the Magistrate could not have found probable cause on them alone. (Appellant's Br. at 21–23.) Hampton argues that "[t]he fact that [he] had purchased a hunting license does not sufficiently support the premise that he had firearms at his residence." (*Id.*) Hampton relies on *United States v. Bennett*, 285 F. Supp. 2d 978, 983 (E.D. Mich. 2003), where the district judge explained that the fact that the defendant had purchased a hunting license a year prior to the search was insufficient to establish probable cause. *Id.* at 981–83.

*Bennett* is easily distinguished from the present case. In *Bennett*, the affidavit was based on (1) the issuance of a single hunting license; and (2) that the defendant had failed in his attempt to legally obtain a firearm. The Magistrate Judge credited the affiant's belief that "firearms were

relatively easy to obtain from individuals who were not licensed to sell or distribute firearms" and, therefore, found probable cause. *Id.* at 981. On review of the Magistrate's determination, the district court judge noted that there was no evidence in the affidavit suggesting that the defendant ever owned or possessed a firearm, only that he attempted, but failed, to obtain one. *Id*. at 982. Therefore, the district court judge concluded that the affidavit was insufficient to establish probable cause. *Id*. However, before doing so, the court made clear that "if there was any evidence put forth in the affidavit that [the defendant] ever owned a gun, it might be reasonable to infer that he still kept it in his house." *Id*. (citing *United States v. Yates*, 132 F. Supp. 2d 559, 565 (E.D. Mich. 2001)).

Here, the affidavit included, *inter alia*, (1) a statement from an informant that he had visited Hampton's residence on several occasions and seen firearms; (2) pictures of guns in Hampton's residence; and (3) a statement that Hampton had recently purchased a hunting license—that was valid on the day the warrant application was submitted—that likely required the use of a firearm to hunt the animal described therein. Furthermore, the more than 58 hunting licenses described in the affidavit bolster the information provided by the informant and support an inference that Hampton was in possession of firearms. *See Bennett*, 285 F. Supp. 2d at 983.

Therefore, we hold that (1) the Magistrate Judge did not arbitrarily exercise his authority in granting the government's search warrant; and (2) that the district court did not err in denying Hampton's motion to suppress and his request for a *Franks* hearing. For the foregoing reasons, we **AFFIRM** the district court's judgment.