**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Herbert LINDO, Defendant–Appellant.**

No. 93–1881.

United States Court of Appeals,
Sixth Circuit.

Argued Jan. 24, 1994.

Decided March 10, 1994.

**354**

Richard S. Murray, Asst. U.S. Atty. (argued and briefed), Grand Rapids, MI, for plaintiff-appellee.

R. Stan Mortenson, James B. Bennett, Miller, Cassidy, Larroca & Lewin, Washington, DC, Roy C. Hayes (argued and briefed), Charlevoix, MI, Priscilla L. Schwarze, Chelsea, MI, for defendant-appellant.

Before: MARTIN and BATCHELDER, Circuit Judges; and HULL, District Judge.*

* The Honorable Thomas G. Hull, United States District Judge for the Eastern District of Tennes-

BOYCE F. MARTIN, Jr., Circuit Judge.

Herbert Lindo appeals his jury conviction for unlawful sale of unregistered securities in interstate commerce. Lindo contends that the district court erred in failing to instruct the jury on a "good faith reliance on counsel" defense, that the evidence introduced at trial was insufficient to support his convictions, and that the court abused its discretion in denying his motion for a new trial. For the following reasons, we affirm the district court.

I

In 1986, Herbert Lindo was, and had been for fifteen years, the president of Kenilworth Systems Corporation, a New York corporation whose stock was publicly traded. Gary Lange was a lawyer with eight years of experience as a solo practitioner and part-time county prosecutor in the Upper Peninsula of Michigan. Richard Osserman was legal counsel to Kenilworth and the author of opinion letters regarding sales of the company's securities.

As the first step of a complex scheme to raise money for his financially-beleaguered company and by a letter dated July 31, 1986, Lindo directed the American Stock Transfer Company, a transfer agent for public companies, to issue four original stock certificates, each representing 300,000 shares of Kenilworth stock, to Lange. Lindo instructed the agent that Kenilworth had received full consideration for the shares. Each certificate was dated August 5, 1986, and bore a legend indicating that the shares represented by the certificate had not been registered under the Securities Act of 1933, had been acquired for investment purposes only, and could not be sold in the absence of an effective registration statement. Although the stock certificates indicated that Lange was the owner of the stock, a letter agreement signed by both Lindo and Lange explicitly stated that the shares had not been sold to Lange, but had only been issued to him for the purpose of obtaining loans.

see, sitting by designation.

Acting on Lindo's behalf and pledging the Kenilworth stock as collateral, Lange used personal contacts to borrow approximately $340,000 from three small banks: (1) First Bank of Ontonagon, in Ontonagon, Michigan; (2) State Bank of Ewen, in Ewen, Michigan; and (3) North Land Savings and Loan, in Ashland, Wisconsin. Two of the loans were in Lange's name and another was in the name of Lindo's wife, Sandra Flynn. Lange forwarded about $220,000 of the loan proceeds to Lindo, and shared the remaining proceeds with a mutual friend of Lange's and Lindo's.

In 1987 and 1988, the loans came due and the banks demanded repayment. Without requiring that Lange restrict sales of the Kenilworth stock to private offerings, Lindo directed Lange to have the banks sell the stock that had been pledged as collateral. The sale of the Kenilworth stock by the banks at Lindo's request was not "registered" by the filing with the Securities and Exchange Commission of a registration statement detailing the risk of buying the stock. Accordingly, these sales could only have proceeded legally if they had qualified under a recognized exemption to the registration requirements of the Securities Act of 1933, as amended. One potentially applicable exemption requires that the person selling the stock not be "an underwriter." 15 U.S.C. § 77d(1). An SEC regulation, commonly known as Rule 144, provides that a person selling stock is not an underwriter when: (1) the quantity of the stock involved is no more than 1% of the outstanding shares; (2) the company is current in its SEC filings; (3) the stock has been beneficially owned for two or more years; (4) the sale is reported to the SEC through the filing of a Form 144; and (5) various limits are placed on the manner of sale, including limits on the solicitation of customers. 17 C.F.R. § 230.144.

In light of these prerequisites to the "not an underwriter" exemption from the registration requirement, opinion letters were transmitted by Kenilworth to the transfer agent. These letters, written on corporate counsel Osserman's letterhead and purportedly signed by Osserman, directed the trans-fer agent to remove the restrictive legend from the stock certificates that it had issued to Lange. The opinion letters, which were in fact signed by Lindo's executive secretary, falsely identified the shareholder of the stock as Lange, claimed that Lange had received the stock as a loan commitment fee, and gave the year in which the stock was issued as 1984. Based on these alleged facts, the letters stated that the stock legally could be sold, without being registered, pursuant to the safe harbor provisions of 17 C.F.R. § 230.144. Using primary brokers with whom Lindo had extensive business dealings, the banks then sold to the general public the shares of stock Lange had pledged as collateral.

On June 4, 1992, a grand jury returned an indictment charging Lindo, Lange, and Osserman with: one count of conspiracy to sell unregistered securities, in violation of 18 U.S.C. §§ 371, 1001 and 15 U.S.C. §§ 77e(a)(2), 77x; and four counts of selling unregistered securities, in violation of 18 U.S.C. § 2 and 15 U.S.C. §§ 77e(a)(2), 77x. After Lange pled guilty to making false statements on a tax return, his trial was severed. The government dismissed the charges against Osserman.

Lindo's jury trial began on March 17, 1993. Pursuant to a plea agreement, Lange testified against Lindo. On March 30, the jury returned a guilty verdict on the illegal sales charged in Counts Two, Three, and Five, but found Lindo not guilty of the conspiracy charged in Count One and the sale charged in Count Four. On June 15, the district court sentenced Lindo to three years probation on each count, to be served concurrently, and imposed a $200,000 fine per count, for a total of $600,000. The conditions of probation included fifteen months of home detention with work release and 1,000 hours of community service. This timely appeal followed.

## II

Lindo initially contends that the district court erred in failing to instruct the jury on a good faith reliance on counsel defense because he commonly relied on the professional opinion of his corporate counsel, Os-

serman, concerning the sales of stock. Solely on the basis of his decision not to testify at trial, according to Lindo, the district court denied him the opportunity to argue that he relied on opinion letters prepared by Osserman in regard to the stock at issue in this case. Lindo maintains that this denial violated his Fifth Amendment rights. Had he been allowed to advance his reliance on counsel theory, Lindo asserts that the government could not have borne its burden of proving that he willfully caused shares, which he knew to be neither registered nor exempt from registration, to be sold to the public.

As this Court has recognized, it is "well established that an instruction should not be given if it lacks evidentiary support or is based upon mere suspicion or speculation." *United States v. James*, 819 F.2d 674, 675 (6th Cir.1987) (quoting *United States v. McLister*, 608 F.2d 785, 791 (9th Cir.1979)). In a case addressing whether a taxpayer-defendant was entitled to an instruction regarding his good faith reliance on his accountant, however, this Court noted that "the standard of evidence necessary to warrant an instruction cannot include an absolute requirement that the taxpayer must testify, for that would burden the taxpayer's own Fifth Amendment right against self-incrimination." *United States v. Duncan*, 850 F.2d 1104, 1115 n. 9 (6th Cir.1988). The Court went on to state that "[w]hen a proper request for an instruction on a criminal defendant's theory of defense is made, it is reversible error not to present that theory adequately in a full statement of the law." *Id.* at 1117–18.

The elements of a reliance on counsel defense are (1) full disclosure of all pertinent facts to counsel, and (2) good faith reliance on counsel's advice. *Id.* at 1116 (agreeing with the trial court in that case that the elements of a reliance on *accountant* defense are "(1) full disclosure of all pertinent facts, and (2) good faith reliance on the accountant's advice"). Moreover, " '[a]ny foundation in the evidence' sufficient to bring the issue into the case" is also sufficient to merit a jury instruction on reliance. *Id.* at 1117 (quoting *United States v. Phillips*, 217 F.2d 435, 442 (7th Cir.1954)). Accordingly, we read *Duncan* to hold that a defendant

who identifies any evidence supporting the conclusion that he or she has fully disclosed all pertinent facts to counsel, and that he or she has relied in good faith on counsel's advice, is entitled to a reliance jury instruction. *See United States v. Kenney*, 911 F.2d 315, 322 (9th Cir.1990) (holding that "[i]n order to qualify for an advice of counsel instruction the appellant must show that there was full disclosure to the attorney of all material facts, and that he relied in good faith on the attorney's recommended course of conduct").

In *Duncan*, the defendant and his accountant were charged with making false statements in a tax return. Because the accountant initiated the transaction that served as the basis for the bringing of charges against the defendant, and therefore possessed all of the relevant facts concerning that transaction from the outset, the Court noted that there was no point in requiring a showing by the defendant that *he* personally disclosed all pertinent facts to the accountant. *Duncan*, 850 F.2d at 1116–17. The *Duncan* Court did not relieve defendants of the duty of demonstrating full disclosure. Rather, the Court noted only that, under the unique circumstances of that case, where the defendant knew from the outset that his accountant possessed the predicate information even absent affirmative disclosure, it was reasonable for the defendant subsequently to have relied in good faith on his accountant's informed advice. Given that the defendant in *Duncan* had nothing further to disclose before he could rely in good faith, and testimony established that the defendant told the Internal Revenue Service agent at the audit conference that he had relied on his accountant for the preparation of the tax return at issue, the Court determined that the defendant was entitled to a good faith reliance instruction. *Id.* at 1115–17.

Lindo, by contrast, has not demonstrated a sufficient foundation in the evidence to merit a good faith reliance on counsel jury instruction. At best, Lindo has shown only that he has in the past relied on Osserman's advice concerning stock sales. No evidence establishes, however, that Lindo provided all of the pertinent facts regarding the stock sales

at issue in this case to Osserman before Osserman, according to Lindo, directed the issuance of the opinion letters that serve as the basis for Lindo's advice of counsel theory. None of the opinion letters bore Lindo's name and there was no testimony that Lindo supplied any of the factual information contained in them to Osserman. As opposed to the unique facts in *Duncan*, moreover, no evidence establishes that Osserman was already in possession of all of the pertinent facts regarding the sales by the banks of the Kenilworth stock and that Lindo was aware that Osserman was so informed. Because Lindo failed to provide any evidence of full disclosure, he cannot claim good faith reliance. In denying Lindo's request for a reliance instruction, the district court did not rule that a defendant must always testify in order to advance a reliance on counsel defense, but rather correctly found that, absent Lindo's testimony, he could not point to other evidence adduced in the case indicating that he relied in good faith on his counsel's advice. Accordingly, the district court did not err in refusing to instruct the jury on a good faith reliance on counsel theory.

### III

■ Lindo also argues that the evidence at trial was insufficient to support his conviction. Initially, Lindo maintains that the government failed to prove that he intentionally sold or offered to sell unregistered securities. Lindo contends, moreover, that the government failed to prove that the banks' sales of Kenilworth stock were not exempt from the registration requirements of the 1933 Act. According to Lindo, the government did not establish that the following exemptions were inapplicable: (1) the "Section 4(1)" exemption for sales not involving an issuer, underwriter, or dealer, 15 U.S.C. § 77d(1); (2) the "Section 4(2)" exemption for sales by an issuer not involving a public offering, 15 U.S.C. § 77d(2); and (3) the hybrid "Section 4(1½)" exemption for transactions by non-issuers that do not involve a public offering.

■ The standard of review on questions of sufficiency of the evidence is narrow. In criminal cases such as this one, we look only to whether after reviewing "the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Beddow,* 957 F.2d 1330, 1334 (6th Cir.1992) (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). Indeed, even "circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.'" *United States v. Ellzey,* 874 F.2d 324, 328 (6th Cir.1989) (quoting *United States v. Stone,* 748 F.2d 361, 363 (6th Cir.1984)).

Lindo's challenge to the sufficiency of the evidence demonstrating his intent to sell the stock is without merit. At trial, the government produced both direct evidence, in the form of testimony by Lange, and circumstantial evidence of Lindo's intent to sell the stock. Lindo's challenge to the direct evidence is no more than a challenge to Lange's credibility. As this Court has held "'[a]ttacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence.'" *United States v. Sanchez,* 928 F.2d 1450, 1457 (6th Cir.1991) (quoting *United States v. Adamo,* 742 F.2d 927, 935 (6th Cir.1984), *cert. denied,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985)). Circumstantial evidence of Lindo's intent includes: (1) the disparity in wealth and business experience between Lindo and Lange; (2) Lindo's superior knowledge of securities laws; (3) Lange's role as Lindo's agent; (4) Lindo's close ties to the New York brokers who handled the sales of the stock; and (5) Lindo's receipt of a large portion of the proceeds of the bank loans. Because we will not reconsider Lange's credibility, and because the record also contains ample circumstantial evidence, we find the evidence, taken in the light most favorable to the government, sufficient to support Lindo's conviction for the intentional sale of unregistered securities.

■ Lindo's further contention that the government failed to prove the inapplicability of certain exemptions from the registration requirements under the 1933 Act is also without merit. Lindo's claim that the Section 4(1) exemption applies is premised on

358

the assumption that, because the banks took the Kenilworth stock without a view to sale, they do not fit the statutory definition of an underwriter. This theory merely repeats Lindo's already discredited argument that he was not involved in the sale and did not intend for the stocks to be sold. Evidence was adduced that the interest taken by the banks did not cut off Lindo's ownership interest in the stocks. Lindo was the "control person" behind the sales, and, as an issuer, did not qualify for the 4(1) exemption.

Lindo also argues for the applicability of the Section 4(2) and 4(1½) exemptions, which apply to transactions not involving any public offering. The government introduced evidence that certain indicia of private placements generally, and also of Kenilworth's private placements specifically, such as the placement of restrictive legends on the reissued stock certificates and standard private placement contracts, were not used in the sales at issue. In addition, a transaction "not involving any public offering" occurs when buyers have access to the kind of information contained in a registration statement. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 125, 73 S.Ct. 981, 984, 97 L.Ed. 1494 (1953) (noting that "[a]n offering to those who are shown to be able to fend for themselves is a transaction 'not involving any public offering' "). Because of the manner of sale, and because the numerous buyers of the stock sold by the banks in this case did not have access to the type of information found in registration statements (such as, most notably, Kenilworth's plans for the money it raised), the Section 4(2) and 4(1½) exemptions did not apply to the sales of the Kenilworth stock that had been pledged as collateral.

IV

Based again on arguments that Lange's testimony was not credible and that the government failed to show that the sales in question were not exempt from the registration requirements of the 1933 Act, Lindo alleges that the guilty verdict was against the great weight of the evidence and thus the district court erred in not granting his motion for a new trial. In considering a district

court's denial of such a motion for a new trial, this Court is "limited to examining the evidence produced at trial to determine whether the district court's determination that the evidence does not 'preponderate heavily against the verdict' is a clear and manifest abuse of discretion." *United States v. Ashworth*, 836 F.2d 260, 266 (6th Cir.1988) (quoting C. Wright, Federal Practice and Procedure § 559 (1982)). Given this deferential standard of review and our discussion of the evidence in Part II of this opinion, we conclude that the district court did not err in denying Lindo's motion for a new trial.

V

For the foregoing reasons, the judgment of the district court is affirmed.