**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0764n.06
Filed: December 17, 2008

**No. 05-5277**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES**, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| **DANIEL GEIGER**, | ) | |
| | ) | **O P I N I O N** |
| *Defendant-Appellant*. | ) | |

**BEFORE:** **MERRITT, MOORE, COLE, Circuit Judges.**

**COLE, Circuit Judge.** Defendant-Appellant Daniel Geiger, former Chief Executive Officer ("CEO") of the USA Mining Corporation and its holding corporation, USA Bullion (collectively, "USA Mining"), appeals his 2004 conviction in the United States District Court for the Eastern District of Tennessee on multiple counts of the following federal crimes: (1) wire fraud, in violation of 18 U.S.C. § 1343; (2) graft, in violation of 18 U.S.C. § 1954; (3) participation in a money-laundering conspiracy, in violation of 18 U.S.C. § 1656(h); and (4) substantive money laundering, in violation of 18 U.S.C. § 1957. Geiger's convictions stem from an alleged scheme by Geiger and his co-defendant Kenneth Combs to defraud the beneficiaries of the SCT Yarns, Inc. ("SCT") pension funds. Over an approximately two-year period, Combs allegedly authorized

1

$6,700,000 in loans from the SCT pension funds to USA Mining, which Geiger then diverted back to personal accounts held by him and Combs. Geiger claims that the district court erred in refusing to allow two of his expert witnesses to testify at trial, thereby prohibiting him from presenting a full and complete defense. For the following reasons, this Court **AFFIRMS** the judgment of the district court.

## I. BACKGROUND

In 1996, Combs obtained financial backing to purchase a controlling interest in SCT, a textile manufacturing business with plants in Tennessee and Washington, and in 1998, he assumed control of its employee-funded pension funds, which were governed by ERISA. At that time, Geiger was serving as the CEO and majority shareholder of USA Mining, which purchased a creditor's interest in dormant gold mines located in Mariposa, California in 1995 (the "Mariposa Mines"), a property for which Geiger was the court-appointed trustee for the benefit of USA Mining and other creditors.

Because Geiger's 500-plus Mariposa Mines claims were in disrepair, he could not actively mine them for gold, and he sought an investor for financing to allow him to fix the claims and begin the extraction process. In 1999, a broker introduced him to Combs, and the two subsequently entered into a September 1999 agreement on behalf of SCT and USA Mining. Under the agreement, USA Mining received a $3,500,000 loan from the SCT pension funds to be repaid from proceeds of the Mariposa Mines; in turn, USA Mining agreed to repay the full amount of the loan within six months, as well as pay a $1,000,000 brokerage fee and transfer $315,000 in prepaid annual interest to SCT at closing. Geiger employed attorneys R.D. Seaton and David La Faille to review the loan agreement.

Under the guise of business transactions, Geiger and Combs then began to use the loan

proceeds for a wide range of personal expenditures. From 1999 through 2001, Geiger made a total of $1,750,000 in personal withdrawals from USA Mining funds, almost all of which were supplied by the SCT pension funds, which, by this time had a $6,700,000 investment in USA Mining. None of the money was ever repaid, and by the fall of 2001, the SCT pension funds were so depleted that SCT was unable to pay out benefits to existing pension-holders. In effect, Geiger stole the pension funds.

On November 13, 2002, following a government investigation, a grand jury indicted Geiger, Combs, and one other co-defendant for wire fraud, graft, participation in a money-laundering conspiracy, and substantive money laundering. Following the indictment, Combs entered a guilty plea, but he committed suicide while awaiting sentencing. The Government then issued two superseding indictments, dropping the charges against Combs but retaining the essential charges against Geiger, and on August 16, 2004, a jury convicted Geiger of all counts.

Geiger filed this timely appeal, arguing that the district court abused its discretion when it refused to allow two of his expert witnesses to testify at his trial. The defense sought to call attorney Boyd Lemon, an expert in legal ethics, to testify that Geiger's transactional attorneys should have warned him about the potential illegality of his dealings with Combs and the SCT pension funds and Robert Garcia, a mining expert, to opine on the potential value of the Mariposa Mines' gold deposits. Geiger argues that the district court's exclusion of both Lemon's and Garcia's testimony violated his constitutional right to present a full and complete defense at trial.

## II. ANALYSIS

### A. Standard of Review

This Court has jurisdiction under 28 U.S.C. § 1291. We review a trial court's evidentiary

3

rulings for abuse of discretion. *United States v. Gibson*, 409 F.3d 325, 337 (6th Cir. 2005) (citing *Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 716 (6th Cir. 1999)). If, however, a trial court's evidentiary rulings are based on conclusions of law, we review those legal conclusions de novo. *Field v. Trigg County Hosp., Inc.*, 386 F.3d 729, 735 (6th Cir. 2004). We will overturn a conviction for improper exclusion of evidence only if that omitted evidence, evaluated in the context of the entire record, creates a reasonable doubt as to the defendant's guilt that did not otherwise exist. *United States v. Blackwell*, 459 F.3d 739, 753 (6th Cir. 2006).

**B.      Expert Testimony**

Rule 702 of the Federal Rules of Evidence states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Like all evidence, the admissibility of expert testimony is also subject to a determination of relevancy under Rule 401 and balancing of probative value against likely prejudice under Rule 403. *See United States v. LeBlanc*, 45 F. App'x 393, 396 (6th Cir. 2002).

This Court employs a four-part test to analyze the admissibility of expert testimony under Federal Rules of Evidence 401, 403, and 702. *See United States v. Vance*, 871 F.2d 572, 577 (6th Cir. 1989) (citing *United States v. Green*, 548 F.2d 1261, 1268 (6th Cir. 1977)). Admissible expert testimony requires: (1) a qualified expert; (2) testifying on a proper subject; (3) in conformity to a generally accepted explanatory theory; (4) the probative value of which outweighs any unfair prejudicial effect. *Id.* at 577. Because the Government neither disputes the credentials of Lemon

4

and Garcia as experts in their respective fields nor challenges the theories upon which they planned to base their respective testimony under *Daubert v. Merrell Dow Phar., Inc.* 509 U.S. 579 (1993), the testimony's admissibility depends on its relevancy and on whether its probative value outweighs its potential unfair prejudicial effect.

## C.    Lemon's Expert Testimony

It is elementary that a wrongdoer may not steal from another and escape criminal liability because his lawyer did not tell him that stealing is wrong. Geiger sought to call Lemon to testify that Geiger's transactional attorneys should have warned him about the potential illegality of his conduct. Specifically, Geiger argues that Lemon's testimony shows that the performance of Geiger's attorneys fell below the applicable standard of care. Although he never expressly raised an "advice-of-counsel" defense at trial, we will assume that Geiger's arguments rest on such a defense. The prima facie elements of an advice-of-counsel defense are (1) full disclosure of all pertinent facts and (2) good faith reliance on the advice of counsel. *United States v. Lindo*, 18 F.3d 353, 356 (6th Cir. 1994) (citing *United States v. Duncan*, 850 F.2d 1104, 1116 (6th Cir. 1988)). Thus, to rely on an advice-of-counsel defense, Geiger would have had to establish that he fully disclosed all pertinent facts to attorneys Seaton and La Faille and that he acted in good faith reliance on their advice that his actions were not objectionable.

The district court refused to admit Lemon's testimony on the ground that it would invade the province of the jury. The court reasoned:

> As I understand it, what this witness is going to do is to state that there are certain standards of care that bind lawyers. That is a legal matter, and that requires him to state a legal conclusion. And pursuant to the law that the Court has relied upon, he could not give such testimony.

5

I also understand that the witness would give an opinion that the performance of certain witnesses in certain instances fell below the applicable standard of care. That is a legal conclusion which the rule would also prohibit this witness from giving. . . . [T]he Court finds that this witness is not in a position to give expert testimony on the law pursuant to Rule 702.

(Trial Tr., Joint Appendix ("JA") 307.) Geiger now argues that rather than bar Lemon's testimony completely, the district court should have at least allowed Lemon to testify as to the discrete fields of legal ethics and legal malpractice. The Government counters that the district court's ruling complies with the applicable law and that regardless, where Geiger failed to meet his burden to establish an advice-of-counsel defense, Lemon's testimony was irrelevant.

It is well-settled that only the trial judge may instruct a jury as to the law. *See United States v. Zipkin*, 729 F.2d 384, 386-87 (6th Cir. 1984). But our case law also suggests that expert testimony as to legal conclusions may be appropriate in certain *limited* circumstances. *See Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994) (implicitly recognizing the admissibility of expert testimony where an expert's credentials demonstrated that he had specific expertise on a relevant issue); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 908 (6th Cir. 2004) (allowing expert to testify on a discrete area in which he had specialized knowledge); *United States v. Monus*, 128 F.3d 376 (6th Cir. 1997) (expert could testify as to whether defendant would be liable for taxes according to the circumstances alleged by the Government); *United States v. DeClue*, 899 F.2d 1465, 1473 (6th Cir. 1990) (allowing witness testimony where she "did not give her opinion about whether appellant was guilty or not; she gave her opinion regarding whether tax was due and owing for the years in question in order to assist the jury in determining a fact in issue"). Thus, we have held that an expert witness may opine on a legal conclusion so long as his testimony would not determine an ultimate issue before the jury.

6

Geiger's counsel attempted to qualify Lemon as an expert in the field of legal ethics, and defense counsel argues that Lemon would have opined that Geiger's attorneys were ethically obligated to warn him that his transactions were potentially illegal. An essential element of an advice-of-counsel defense is that the defendant relied in good faith on his attorney's advice. *Lindo*, 18 F.3d at 356. Lemon's expert testimony regarding the nature of the attorney-client relationship and the ethical duties of Geiger's attorneys bore upon Geiger's legitimate expectations as a client and, as such, may have assisted the jury in evaluating his state of mind. Although such testimony directly relates to whether Geiger's attorneys violated their ethical and legal obligations, because their potential legal violations were not before the jury, we conclude that the testimony was proper under Rule 702. *See Monus*, 128 F.3d at 386; *Declue*, 899 F.2d at 1473. Thus, the district court could have allowed Lemon's testimony on the limited issue of the nature of an attorney-client relationship and the duties of Seaton and La Faille.

Regardless, the district court did not err in excluding Lemon's proffered testimony because he presented no evidence that Geiger made a full disclosure to his attorneys concerning all his dealings with Combs and the SCT pension funds. Given the complete absence of such evidence, Lemon's testimony was irrelevant conjecture about Geiger's interactions with Seaton and La Faille. This Court addressed a similar situation in *United States v. Blackwell*. 459 F.3d at 753-54. There, a defendant convicted of insider trading was denied the admission of expert testimony from an economist that inside information often reaches outsiders through "leakage" rather than tipping. *Id*. On appeal, we held that given the absence of independent corroborating evidence that such "leakage" actually occurred, the district court properly excluded the expert's testimony as irrelevant. *Id*. at 754.

As in *Blackwell*, the relevance of Lemon's expert testimony depends on the existence of

corroborating evidence that Geiger made a full disclosure to his attorneys. The record is devoid of any such evidence. Lemon lacked personal knowledge of what Geiger actually said to his attorneys and was incompetent to testify in that regard. *See Blackwell*, 459 F.3d at 754 ("While the existence of other sources of tipping surely was relevant to Defendant's case, [the expert witness] was not qualified to testify about these sources inasmuch as he lacked personal knowledge of them."). Seaton (Geiger's only attorney to take the stand) testified only that Geiger made the $315,000 interest prepayment directly to SCT rather than to the pension funds, and that he had told Geiger that the loan seemed proper from a contract perspective. Further, given hearsay limitations, evidence of full disclosure could only have come from Geiger himself, and Geiger did not testify. *See United States v. Hatchett*, 918 F.2d 631, 658 n.8 (6th Cir. 1990) (upholding district court's exclusion of attorney's testimony about tax advice he gave to defendant where, given defendant's own refusal to testify, the jury would have been induced to accept the truth of the matters disclosed by the attorney). Therefore, though Lemon's testimony was potentially admissible under Rule 702, the district court did not abuse its discretion in excluding it as irrelevant under Rule 401.

**D.  Garcia's Expert Testimony**

Geiger also argues that the district court abused its discretion when it excluded the testimony of Garcia. The defense hired Garcia to investigate and analyze the Mariposa Mines in 2003 to assign a dollar value to the project and later called him to testify that the mines had considerable gold deposits in an effort to establish that USA Mining was not completely insolvent. Garcia was prepared to offer his estimate that the Mariposa Mines contained approximately $630,000,000 in gold, but the district court excluded his testimony, explaining that the "gold content" figure was both potentially misleading to the jury because it did not account for the cost of extraction and irrelevant

as to Geiger's intent in carrying out the alleged scheme with Combs.

Geiger asserts that Garcia's valuation testimony makes the existence of fraud less likely by showing that Geiger had valuable assets that he could stake against the amounts he borrowed from the SCT pension funds. However, because we find that Garcia's testimony does not bear on Geiger's overall scheme, its exclusion was not an abuse of discretion by the district court. *See United States v. Webster*, 125 F.3d 1024, 1032-34 (7th Cir. 1997) (deeming proper the district court's exclusion of evidence of value of defendant's property where the valuation was unrelated to defendant's intent regarding the crime at issue).

## IV.  CONCLUSION

For these reasons, this Court **AFFIRMS** the judgment of the district court and upholds Geiger's conviction.